# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2767
No. 11-3822

_____

United States of America,

Plaintiff - Appellee,

v.

Rasheed G. Shakur,

Defendant - Appellant.

* * * * * * * * *

_____

No. 11-2768

_____

United States of America,

Plaintiff - Appellee,

v.

Latoyce Stockman,

Defendant - Appellant.

* * * * * * * * * *

Appeals from the United States
District Court for the
Western District of Missouri.

_____

Submitted: June 11, 2012
Filed: August 30, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

After a joint trial, a jury convicted Rasheed G. Shakur of various drug offenses, including conspiracy to distribute 1,000 kilograms or more of marijuana; conspiracy to commit money laundering; being a felon in possession of a firearm; and possession of a firearm in relation to a drug-trafficking offense. The jury convicted LaToyce Stockman of conspiracy to distribute less than 50 kilograms of marijuana. The district court sentenced Shakur to life plus 60 months in prison and Stockman to 36 months in prison. They both appeal. Shakur argues the district court erred in denying his mid-trial motion for appointment of new counsel and in allowing him to proceed *pro se* at sentencing. He further contends in a separate appeal that the court exceeded its authority by entering a Preliminary Order of Forfeiture nearly three months after entering Judgment in his criminal case. Stockman argues insufficient evidence to support his conviction, error in admitting $30,000 cash officers seized from his home, and procedural error in determining drug quantity resulting in an unreasonable sentence. We reverse the forfeiture order and otherwise affirm.

## I. Background

At trial, the government introduced substantial evidence establishing that Shakur operated a multimillion dollar drug trafficking conspiracy. Claiming to be Kansas City's "Michael Corleone" (of "The Godfather" film series), he bankrolled everything from his associates' legal expenses and family funerals to his luxurious lifestyle. Pledged one associate, "Got foot soldiers out here like me, ready to kill anything that moves for you." Stockman was one "foot soldier" who purchased pound quantities of marijuana from Shakur for street-level distribution.

In early 2007, the Federal Bureau of Investigation (FBI) and Kansas City Police Department began investigating the conspiracy. Their investigation produced evidence that, during 2007, Hugo Rodriguez-Rodriguez procured marijuana in El Paso, Texas and, with his associates, flew loads to Kansas City and delivered 2,880 pounds to

Shakur (as well as 31 pounds of cocaine). Later that year, officers stopped Rodriguez-Rodriguez and an associate leaving Shakur's residence with $17,000 in cash. Officers persuaded the associate to work as a paid informant. She provided numerous details of the conspiracy, which led to the seizure in 2008 of over $200,000, money destined for suppliers in Mexico. The suppliers then limited Rodriguez-Rodriguez's access to drugs, constricting Shakur's pipeline.

Seeking new sources, Shakur established relations with Audel Delgado-Ordonez in Phoenix, eventually obtaining some 2,500 pounds of marijuana. Shakur flew to Arizona every other week, packed eleven-pound quantities into boxes, and mailed the boxes from various Phoenix post offices to various addresses in Kansas City. He and his associates then gathered the boxes at his residence. The FBI obtained judicial authorization to wiretap Shakur's phones from March 2009 to June 2009. As they collected details of Shakur's operation from the wiretap, agents began intercepting packages to prove their contents. The conspirators devised but never implemented a scheme to transport drugs from Phoenix to Kansas City via tractor trailer to avoid losing packages in the mail. Throughout these operations, Shakur purchased ecstasy pills and high-grade marijuana from Jesse Oliver in Sacramento, California, using a similar mailing system.

On June 25, 2009, officers simultaneously executed search warrants at several conspirators' residences, seizing evidence and making arrests. Numerous indictments followed. Shakur and Stockman proceeded to trial. Twenty nine others pleaded guilty; many testified for the government against Shakur and Stockman.

## II. Shakur's Appeals

**A. Motion to Dismiss Trial Counsel.** At the start of the third day of trial, Shakur's retained counsel advised the district court that Shakur had asked counsel to withdraw. The court asked, "What's the basis for this, Mr. Shakur?" Shakur responded that he wanted "to go on record . . . to dismiss counsel . . . on the grounds

of negligence, conflict of interest, statements of neglect, [] inability to object and communicate, attorney-client privileges, and violating disciplinary rule 1-102(a) paragraph 4."[1] The court inquired, "Can you be a little more specific?" Shakur replied, "It's not really an issue. I just think it would be best as far as this case and trial goes if I be allowed to dismiss counsel from these proceedings." In response to further questions from the court, Shakur said he had not selected or talked to another attorney, did not wish to represent himself, and was not asking for a continuance of the trial. The district court observed that Shakur's counsel "enjoys an excellent reputation" and opined that "you've been well represented during the course of this case." The court denied Shakur's request and encouraged him to cooperate with his experienced attorney to ensure a fair trial.

On appeal, Shakur argues the district court abused its discretion by failing to "conduct an adequate inquiry into the nature and extent of an alleged breakdown in attorney-client communications." United States v. Taylor, 652 F.3d 905, 908 (8th Cir. 2011) (quotation omitted). Last-minute requests to substitute counsel are disfavored. United States v. Jones, 662 F.3d 1018, 1024 (8th Cir. 2011), cert. denied, 132 S. Ct. 2733 (2012). Shakur's request was made on the third day of trial. He had not attempted to select substitute counsel, and did not seek to represent himself nor a continuance of the trial. A defendant's right to choose counsel "must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." Id. at 1024 (quotation omitted). Here, the district court carefully inquired why Shakur was dissatisfied with counsel. His unsupported assertion of a "conflict of interest" required no "elaborate inquiry." Ausler v. United States, 545 F.3d 1101, 1104 (8th Cir. 2008). The district court did not abuse its discretion in denying Shakur's request when he could give no good reason -- his response strongly suggested he was merely "making a record" -- and granting the request would have seriously obstructed orderly completion of the on-going trial.

---

[1]Government counsel advises there is no such rule.

**B. Motion To Proceed *Pro Se* at Sentencing.**  Following Shakur's February 2011 conviction, he filed a *pro se* motion to "move" counsel to stand-by status and allow Shakur to represent himself.  The district court granted this request in an April order stating that the court "will allow the Defendant to represent himself at sentencing" if he makes a knowing and intelligent waiver of his right to counsel.  The court returned to this issue at the start of the August sentencing hearing.  Shakur changed his position, requesting a continuance while he "received confirmation from the attorney that I've been speaking with to enter his appearance [and] help me with sentencing."  The district court advised, "today all I'm doing is sentencing -- making sentencing guidelines calculations, hearing any evidence relevant to sentencing, and hearing the parties' arguments regarding appropriate punishment."  The court denied Shakur's last-minute request for a sentencing continuance and gave him the option of proceeding *pro se* or with his retained stand-by counsel, who was present.  Rejecting the court's advice that he would benefit from representation by counsel, Shakur opted to represent himself.

On appeal, Shakur argues the district court should have resolved his *pro se* motion before the sentencing hearing, when there would have been time to find new counsel.  The court should also have warned him more specifically about the dangers of self-representation, resulting in a choice to proceed *pro se* that was not knowing and intelligent.  This Sixth Amendment issue "depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused."  United States v. Marks, 38 F.3d 1009, 1015 (8th Cir. 1994), cert. denied, 514 U.S. 1067 (1995).  After careful review, we conclude the sentencing record reflects the same circumstances confronting the district court in United States v. Day, 998 F.2d 622, 626-27 (8th Cir. 1993), cert. denied, 511 U.S. 1130 (1994), where we concluded the court did not abuse its discretion:

> [Shakur's] criminal record evidences a history of previous contact with the criminal justice system sufficient to give him a general knowledge of the dangers and disadvantages of self-representation.  [Shakur's] conduct

-5-

at the hearing demonstrates that he had a sophisticated understanding of the hearing's purposes and procedure. And there is nothing in the record to suggest that further delay and [new] counsel would have produced a different sentence [here, mandatory life in prison].

(Citation and quotation omitted.) There was likewise no abuse of discretion here.

**C. Forfeiture Issues.** The superseding indictment included thirteen numbered Forfeiture Allegations, each seeking criminal forfeiture of specific real or personal property. In December 2010, before trial, the government moved to dismiss Forfeiture Allegations 3, 5, and 7 relating to three parcels of real property in Kansas City. "[C]riminal forfeiture [is] an aspect of punishment imposed following conviction of a substantive criminal offense." Libretti v. United States, 516 U.S. 29, 39 (1995). Thus, when the jury returned verdicts convicting Shakur and Stockman of substantive offenses on February 4, 2011, Rule 32.2(b) of the Federal Rules of Criminal Procedure prescribed the procedures governing resolution of the government's Forfeiture Allegations. In an Appendix to this opinion, we set forth the pertinent provisions of Rule 32.2(b), which was significantly amended in 2009, and of Rules 35(a) and 36, the relevance of which will soon become apparent.

After the guilty verdicts but before the jury was discharged,[2] the district court asked whether either defendant requested jury findings of forfeiture:

> THE COURT: Now, Mr. Cornwell [counsel for Shakur], let me start with you. I've been advised . . . that your client does not wish to contest any of these forfeiture allegations?
>
> MR. CORNWELL: That's true, Judge. I've gone over each of the . . . specific amounts, or locations [of property alleged]. I've indicated to [Shakur] that I didn't think . . . I could realistically stand in front of

---

[2]The timing of the request violated Rule 32.2(b)(5)(A), but this violation appears to be harmless.

this jury, as an officer of the court, and make a cogent argument. And . . . Mr. Shakur . . . agrees with me.

THE COURT: Okay. Mr. West [counsel for Stockman], what's your client's position?

MR. WEST: We are not going to waive our right to have a forfeiture hearing, Your Honor.

Counsel for Stockman and the government then argued to the jury the one Forfeiture Allegation relating to Stockman -- $30,000 cash seized during a warrant search of his residence. The jury returned a unanimous special verdict finding that this property was *not* subject to forfeiture.

On February 15, Shakur filed the afore-mentioned *pro se* Motion To Move Counsel to stand-by status, stating that he wanted to "file my own motions and affidavits" relating to three Federal Rules of Criminal Procedure including Rule 32.2(c), part of the Rule that governs criminal forfeitures. Eight days later, Shakur filed a *pro se* Petition "contesting" Forfeiture Allegations 1, 2, 4, 6, 8, and 10 and seeking "to rescind" those forfeitures. On April 4, the district court entered separate orders granting the Motion to Move Counsel, which made Shakur his own counsel for pre-sentencing forfeiture proceedings, and summarily denying the forfeiture Petition. The second order described the Petition as seeking "recession [sic] of the forfeiture" without acknowledging that it "contested" six specific Forfeiture Allegations.

The April 4 order is the last docket entry relating to forfeiture until August 4, the day of the sentencing hearing. During the four-month interim, the government failed to file a Rule 32.2(b)(1)(A) motion seeking "forfeiture of specific property," and the district court violated Rule 32.2(b)(1)(B) by failing to conduct a hearing on the Forfeiture Allegations that Shakur had contested. Most significantly, the district court violated Rule 32.2(b)(2)(A) and (B) by not entering a preliminary order of

-7-

forfeiture "sufficiently in advance of sentencing to allow the parties to suggest revisions." Indeed, the court failed to enter a preliminary order of forfeiture.

On the day of the sentencing hearing, almost one month after the hearing had been scheduled, the government filed a belated Motion for a Preliminary Order of Forfeiture. The motion listed all the property relating to Shakur found in the indictment's Forfeiture Allegations, including three parcels the government had moved to dismiss before trial. The motion made no reference to the sentencing that day and apparently was not served personally on Shakur; it appears to be a form document from the government's files, with the specific properties filled in.

At the sentencing hearing, in response to Shakur's request to represent himself, the district court omitted forfeiture from its summary of the issues to be considered. Stand-by counsel, before being removed, made no mention of the government's untimely forfeiture motion or the district court's failure to timely comply with the requirements of Rule 32.2(b)(1)(A), (1)(B), 2(A), and 2(B). The only mention of forfeiture came at the very end of the lengthy hearing when the district court stated, after pronouncing Shakur's sentence, "I am going to enter a forfeiture in this case. That's been resolved at the trial," a clear violation of Rule 32.2(b)(1)(A) and (b)(4)(A). The court's Judgment in a Criminal Case, entered the next day, simply stated, "Forfeiture will be imposed by further order of the Court," again violating Rule 32.2(b)(4)(A).

On August 16, the government filed an Amended Motion for a Preliminary Order of Forfeiture, stating in a footnote, without explanation, that it "is no longer seeking forfeiture" of two of the three parcels included in its pretrial motion to dismiss.[3] On September 26, Shakur filed a *pro se* motion to dismiss the government's

---

[3]We can find no ruling on that motion, and the forfeiture order being appealed includes one of those three parcels, a strong indication that the procedural errors we describe prejudiced Shakur's property rights.

motion, arguing that the court's failure to enter a preliminary order of forfeiture and to incorporate that order in the judgment were non-clerical violations of Rule 32.2, and therefore neither Rule 35 nor Rule 36 permitted amending the judgment to include a forfeiture order. After the government responded, the district court entered a Preliminary Order of Forfeiture on October 26, 2011, providing in relevant part:

> 1. Based upon the guilty verdict, the criminal forfeiture allegation in the Superseding Indictment, and defendant Rasheed Shakur's decision not to contest the forfeiture counts that the properties are subject to forfeiture, the following property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of 21 U.S.C. § 853 [the court then listed all property included in the government's Amended Motion].

> 2. Furthermore, the defendant Rasheed G. Shakur shall pay to the United States $2,990,000 as a personal money judgment.

> 3. Upon entry of the Order, the United States Attorney General or his designee is authorized to seize the above-described properties in accordance with Fed. R. Crim. P. 32.2(b)(3).

> \* \* \* \* \*

> 5. Pursuant to Fed. R. Crim. P. 32.2(b)(3), this Preliminary Order of Forfeiture shall become final as to the defendant. [Note that Rule 32.2(b)(4)(A), not (b)(3), now governs when a preliminary forfeiture order "becomes final as to the defendant."]

Shakur separately appeals this forfeiture order, arguing as he did in the district court that Rule 32.2, read in conjunction with Rules 35 and 36, deprived the court of jurisdiction to enter a preliminary order of forfeiture more than fourteen days after sentencing. We review this contention *de novo*. See United States v. Timley, 507 F.3d 1125, 1128 (8th Cir. 2007).

Rule 32.2(b)(4) provides that a preliminary forfeiture order becomes final as to the defendant at sentencing and "must" be included "directly or by reference" in the final judgment. Thus, a final order of forfeiture that is not part of the judgment "has no effect." United States v. Bennett, 423 F.3d 271, 276 (3d Cir. 2005); accord United States v. Ferrario-Pozzi, 368 F.3d 5, 8 (1st Cir.), cert. denied, 543 U.S. 883 (2004); United States v. Pease, 331 F.3d 809, 814-15 (11th Cir. 2003). Rule 35(a) gives the district court "plenary power to amend a final order in a criminal case for seven [now fourteen] days" after sentencing. United States v. Hatcher, 323 F.3d 666, 673 (8th Cir. 2003). Rule 35(a) does not apply here because the district court's forfeiture amendment was entered 83 days after Shakur's sentencing. However, Rule 36 allows a district court to correct a clerical error in a judgment "at any time." Like other circuits,[4] in cases where a timely preliminary order of forfeiture was entered before sentencing, we have held that failure to incorporate that order in the final judgment is a clerical error for purposes of Rule 36, so long as the failure did not prejudice the rights protected by Rule 32.2. See United States v. Koch, 491 F.3d 929, 932 (8th Cir. 2007); Hatcher, 323 F.3d at 673. The 2009 amendments to Rule 32.2(b)(4)(B) now codify that principle.[5] The government argues that the addition of a forfeiture order to Shakur's sentence was the correction of a clerical error permitted by Rule 36.

The most obvious problem with this argument is that no preliminary order of forfeiture was ever entered or even approved prior to sentencing and the entry of

---

[4]See United States v. Quintero, 572 F.3d 351, 353 (7th Cir. 2009), and cases cited.

[5]The Advisory Committee explained the change was "intended to clarify what the district court was required to do at sentencing, and to respond to conflicting decisions in the courts regarding the application of Rule 36 to correct clerical errors. The new subparagraphs add considerable detail regarding the oral announcement of the forfeiture at sentencing, the reference to the forfeiture order in the judgment and commitment order, the availability of Rule 36 to correct the failure to include the forfeiture order in the judgment and commitment order, and the time to appeal." Fed. R. Crim. Pro. 32.2(b)(4)(B) Advisory Committee Note.

Shakur's final judgment. Amended Rule 32.2(b)(4)(B) provides that the failure to "include the forfeiture order" in the judgment may be corrected at any time under Rule 36. Reference to "the forfeiture order" obviously means a preliminary forfeiture order entered in accordance with Rule 32.2(b)(2). That is consistent with our decisions in Hatcher and Koch, where the district courts entered preliminary forfeiture orders before sentencing. But when the court has entirely failed to enter either a preliminary or a final forfeiture order before entry of final judgment and passage of the fourteen-day correction period granted by Rule 35, the issue is whether the subsequent entry of *both* preliminary *and* final forfeiture orders can be considered the remedying of "clerical errors" under Rule 36. That proposition is certainly inconsistent with our decision in United States v. Yakle, 463 F.3d 810, 811 (8th Cir. 2006): "Rule 32(c)(1) directed a sentencing court to do something, and a failure to follow the rule is a legal error, not a clerical one."

In United States v. Martin, 662 F.3d 301, 310 (4th Cir. 2011), cert. denied, 132 S. Ct. 1953 (2012), a divided panel "refuse[d] to vacate the district court's tardy forfeiture orders." Prior to the sentencing in Martin, the district court had held two evidentiary forfeiture hearings and announced its conclusion "that the government's preliminary forfeiture order is fully supported." But the court did not mention forfeiture at sentencing nor enter a preliminary forfeiture order until one month after sentencing. Id. at 305. Without addressing this Rule 36 issue, the panel majority concluded the court had jurisdiction to enter the tardy orders because defendants were on notice of the pending forfeiture:

> Appellants themselves do not -- and indeed could not -- argue that they were caught off-guard. The district court held multiple, comprehensive hearings on forfeiture, in which both the fact of liability and the amount were determined. The district court made clear at the end of the final forfeiture hearing -- a mere minutes prior to sentencing Appellants -- that it intended to enter the forfeiture order. Appellants lack of surprise is further evidenced by the fact that they did not challenge the forfeiture

until almost three years after the district court entered the final order of forfeiture.    Id. at 309 (citation omitted).[6]

Martin is factually distinguishable from this case in critical respects.  Although Shakur received notice at the end of his sentencing hearing and again in the written judgment that the court would impose forfeiture, there was no pre-sentencing evidentiary forfeiture hearing and no judicial pronouncement of what specific property would be forfeited.  Notice is important, but it is not the only important consideration.  "Procedural due process requires that an individual receive adequate notice *and procedures to contest the deprivation of property rights*" that result from criminal forfeiture under 21 U.S.C. § 853.  United States v. Smith, 656 F.3d 821, 827 (8th Cir. 2011) (emphasis added), cert. denied, 132 S. Ct. 1586 (2012).  Here, Shakur timely contested six of the government's Forfeiture Allegations,[7] but his objections were entirely ignored.  He was denied timely determination of "the requisite nexus," Rule 32.2(b)(1)(A); a hearing on the contested allegations, Rule 32.2(b)(1)(B); the entry of a preliminary order "directing the forfeiture of specific property," Rule 32.2(b)(2)(A);

---

[6]Although the issue is not before us, we would be reluctant to follow the panel majority in Martin, which applied the Supreme Court's analysis of statutory deadlines in Dolan v. United States, 130 S. Ct. 2533 (2010), to the interpretation of Rule 32.2(b), without considering the Court's statement in United States v. Addonizio, 442 U.S. 178, 189 & n.16 (1979), that "once a sentence has been imposed, the trial judge's authority to modify it is" limited to Rule 35, which imposes a time period that "is jurisdictional and may not be extended."  See also the Advisory Committee Notes to the 1985 Amendments to Rule 35(b) and to the 1991 Amendments to Rule 35(c); both of those rules were precursors to the present Rule 35(a).

[7]The district court clearly erred in ruling otherwise in the October forfeiture order Shakur appeals.  Note that Rule 32.2(b) does not provide that submitting the issue to the jury is the only way to "contest" a forfeiture allegation.  In response to the court's inquiry on February 4, counsel represented that Shakur agreed not to submit forfeiture issues to the jury, not that he waived all forfeiture objections.  Thus, in his February 23 *pro se* motion, Shakur timely contested six specific Forfeiture Allegations for purposes of Rule 32.2(b)(1)(B).

and entry of that order "sufficiently in advance of sentencing" to allow him to seek revisions, Rule 32.2(b)(2)(B). Finally, after sentencing, he was denied inclusion of a preliminary forfeiture order in his judgment of conviction, Rule 32.2(b)(4)(B), which deprived him of "the right to have the entire sentence imposed as a package and reviewed in a single appeal," Koch, 491 F.3d at 932.

The wholesale violation of these Rule 32.2(b) mandates denied Shakur a meaningful opportunity to contest the deprivation of his property rights, as due process required. In these circumstances, we have no difficulty concluding that the district court's forfeiture order of October 26, 2011, did not merely correct a "clerical error," as Rule 36 permits. The violations were prejudicial legal errors, not clerical errors. Accordingly, Addonizio makes clear the court was without power to enter that order, and it is reversed. There can be no criminal forfeiture in this case.

### III. Stockman's Appeal

**A. Sufficiency of the Evidence.** Stockman argues the evidence was insufficient to convict him of conspiring to distribute less than 50 kilograms of marijuana, a Class D felony. See 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846 (2006). When considering this issue, "we will affirm if the record, viewed most favorably to the government, contains substantial evidence . . . sufficient to prove the elements of the crime beyond a reasonable doubt." United States v. Hodge, 594 F.3d 614, 617-18 (8th Cir.) (quotation omitted), cert. denied, 130 S. Ct. 3401 (2010). "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." United States v. Bowie, 618 F.3d 802, 812 (8th Cir. 2010) (quotation omitted), cert. denied, 131 S. Ct. 954 and 1586 (2011).

We conclude the government's evidence at trial was sufficient. A Shakur associate testified that Shakur sent more than one package of marijuana from Arizona

to Miracle Auto Care in Kansas City, where Stockman was employed. Three witnesses testified they saw Stockman at Shakur's residence; one recalled seeing Stockman while delivering packages of marijuana:

> I remember one occasion . . . . Rasheed took the package and he went to the kitchen with it and opened the box up, and I guess proceeded to bag up some marijuana into the larger sandwich bags, which my recollection of that would be a pound. And I've seen him give Latoyce a couple of those thick baggies, and then leave.

There was also testimony that officers executing a search warrant at Stockman's residence found a loaded semiautomatic handgun inside a dresser drawer and $30,000 cash in a bedroom closet.

Government wiretaps intercepted fifteen calls between Shakur and Stockman; at the jury's request, the tapes were replayed in open court during the jury's deliberations. During these conversations, Shakur called Stockman "Hyman Roth" (of "The Godfather" film series); Stockman referred to Shakur as "boss" and "leader of this crew ship." On April 10, 2009, the two discussed something that did not arrive that day but would probably arrive the next. On April 11, again discussing something that had yet to arrive, Stockman asked Shakur what he had "on hand." On April 13, Shakur called to tell Stockman a parcel was ready for pick-up at a processing center. Stockman asked if he needed to give his name. Shakur replied that he would try to have the parcel delivered to Stockman so he did not have to pick it up. That afternoon, Shakur called Stockman and asked if "the dude brought it." When Stockman said no, Shakur said he would check on it.

On May 14, Shakur called to ask Stockman if he went to Miracle Auto Care to pick something up. Stockman said no and asked, "What's the deal, the full order?" When Shakur replied no, Stockman asked why Shakur was unable to fill the order. Shakur answered, "It wasn't on the ground. . . . it wasn't no good." Stockman asked if it was close, and Shakur said, "not really close, you alright though. You'll breathe."

Shakur told Stockman to go to the pickup point and ask for a parcel for Miracle Auto Care. Stockman asked Shakur if it was "the place I went to last time," and Shakur answered, "Yep." On June 3, Shakur told Stockman something was on the ground and would probably arrive Tuesday. Stockman said that was "cool" because he needed more. On June 9, Stockman told Shakur something had arrived the previous day. He stated a man brought it to the door, to which Shakur replied, that's what they're supposed to do. Stockman told Shakur he didn't open it. Shakur replied he shouldn't have to. Stockman said, it's "good lookin' though."

Stockman argues the government proved nothing more than his association with Shakur, involvement with packages whose contents remained unproven, and involvement with large sums of cash for which he was not required to provide an innocent explanation. There was evidence Stockman worked on Shakur's expensive vehicle while employed at Miracle Auto Care. But "the presence of one possible 'innocent' explanation for the government's evidence does not preclude a reasonable jury from rejecting the exculpatory hypothesis in favor of guilt beyond a reasonable doubt." United States v. Maloney, 466 F.3d 663, 667 (8th Cir. 2006). The officers did not find drugs or drug paraphernalia at Stockman's residence, and his truck was seen only a few times during the surveillance of Shakur's residence. But there was substantial evidence of Stockman's knowing involvement in the conspiracy, and the jury returned a guilty verdict of conspiring to distribute a substantially smaller quantity than Shakur, less than 50 kilograms. "A defendant is liable for actions of a conspiracy that were reasonably foreseeable to him." United States v. Marquez, 605 F.3d 604, 611 (8th Cir. 2010). The government presented sufficient evidence for a reasonable jury to find Stockman guilty of that lesser offense.

**B. An Evidentiary Issue.** Stockman argues the district court abused its discretion in admitting evidence -- testimony and a video -- that officers found $30,000 cash in a closet during the warrant search of his residence. He concedes the cash was probative evidence of drug trafficking because drug distributors typically deal in cash. But he argues the district court should have excluded this evidence under

-15-

Rule 403 of the Federal Rules of Evidence, which grants the trial court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

Here, Stockman argues, because the government offered no proof of cash transactions between Stockman and another conspirator, or of his receipt of the cash, it was "overwhelmingly unfair" for Stockman "to be painted with the drug distributor brush" in this fashion. We disagree. His reliance on our Rule 404(b) precedents is misplaced because the cash was circumstantial evidence of the charged conspiracy, not evidence of uncharged misconduct. See, e.g., United States v. O'Dell, 204 F.3d 829, 833-34 (8th Cir. 2000). As in United States v. Logan, 54 F.3d 452, 454 (8th Cir. 1995), the presence of a large amount of cash helped establish Stockman's participation in the charged conspiracy. The district court did not abuse its broad discretion in finding no unfair prejudice and admitting this evidence.[8]

**C. A Sentencing Issue.** The jury convicted Stockman of conspiracy to distribute less than 50 kilograms of marijuana. The PSR recommended a base offense level of 20 because he was responsible for at least 40 but less than 60 kilograms of marijuana. See U.S.S.G. § 2D1.1(c)(10). At sentencing, the government introduced testimony by a Kansas City postal inspector that he saw Stockman pick up a 20-pound package from Shakur in Arizona, and testimony by a Shakur associate that, while in Arizona, she saw Shakur shipping packages of marijuana to Miracle Auto Care in Kansas City. Considering this testimony and the evidence presented at trial, the

_____

[8]We consider it irrelevant to the sufficiency and Rule 403 issues that the jury, after finding Stockman guilty of the conspiracy charge, returned a special verdict finding the $30,000 not subject to forfeiture. As the district court noted in denying Stockman's motion for a new trial, "The jury could have, and did, find that Defendant was part of a conspiracy to distribute marijuana, but that the Government did not carry its burden of proof with respect to proving the forfeiture count." Accord United States v. Morales, 397 F. App'x 883, 885 (4th Cir. 2010) (unpublished), cert. denied, 132 S. Ct. 1063 (2012).

district court found that Stockman was responsible for conspiring to distribute at least 40 kilograms of marijuana, resulting in an advisory guidelines sentencing range of 33 to 41 months in prison. The court denied Stockman's request for a downward variance and sentenced him to 36 months in prison.

On appeal, Stockman argues the district court's drug quantity finding was clearly erroneous, a procedural sentencing error that produced a substantively unreasonable sentence. See United States v. Hull, 646 F.3d 583, 586-87 (8th Cir. 2011) (standard of review). We disagree. "Before a quantity of drugs may be attributed to a particular defendant, the sentencing court is required to find by a preponderance of the evidence that the transaction or activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him." United States v. Brown, 148 F.3d 1003, 1008 (8th Cir. 1998) cert. denied, 525 U.S. 1169 (1999); see U.S.S.G. § 1B1.3(a)(1)(B). Here, the district court needed to approximate drug quantity for sentencing purposes because the amount of the marijuana seized did not reflect the scale of the drug trafficking conspiracy. See U.S.S.G. § 2D1.1, comment. (n.12). In finding Stockman responsible for at least 40 kilograms of the more than 1000 kilograms attributed to Shakur, the conspiracy's leader, the court explained:

> You're going in and out of this drug house where all these other drug dealers are at. They're not just watching basketball over there. We've heard evidence that there's [] some deals done. Mr. Shakur takes people into a kitchen and makes deals, sometimes out of the sight of everybody. This was a far reaching drug conspiracy, and the jury said you're a part of it, Mr. Stockman.

After careful review of the record at trial and sentencing, we conclude this finding was not clearly erroneous. There was no procedural sentencing error.

-17-

## IV. Conclusion

In <u>United States v. Shakur</u>, we affirm the judgment of the district court dated August 5, 2011; we reverse the Preliminary Order of Forfeiture dated October 26, 2011; and we deny Shakur's untimely *pro se* Motion in the Interests of Justice to Preserve Legal Rights on Direct Appeal. In <u>United States v. Stockman</u>, we affirm the judgment of the district court.

## APPENDIX

## Rule 32.2.  Criminal Forfeiture

### (b)  Entering a Preliminary Order of Forfeiture.

**(1)(A) Forfeiture Determinations.**  As soon as practical after a verdict or finding of guilty . . . on any count . . . regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute.  If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. . . .

**(B) Evidence and Hearing.** . . . If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

**(2)(A) Contents of [Preliminary] Order.**  If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property . . . . without regard to any third party's interest in the property.

**(B) Timing.**  Unless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant under Rule 32.2(b)(4).

**(3) Seizing Property.**  The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture . . . and to commence proceedings that comply with any statutes governing third-party rights. . . .

**(4)(A) When Final.**  At sentencing -- or at any time before sentencing if the defendant consents -- the preliminary forfeiture order becomes final as to the defendant. . . .

**(B) Notice and Inclusion in the Judgment.**  The court must include the forfeiture when orally announcing the sentence . . . [and] include the forfeiture order, directly or by reference, in the judgment, but the court's failure to do so may be corrected at any time under Rule 36.

**(C) Time to Appeal.**  The time . . . to file an appeal from the forfeiture order . . . begins to run when judgment is entered. . . .

**(5)(A) Retaining the Jury.**  In any case tried before a jury . . . the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict.

## Rule 35.  Correcting or Reducing a Sentence

**(a)  Correcting Clear Error.**  Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.

## Rule 36.  Clerical Error

After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.

_____