# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-1668

_____

United States of America

*Plaintiff - Appellee*

v.

Amado Correa-Santos

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 16, 2015
Filed: May 8, 2015

_____

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Amado Correa-Santos pleaded guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. After vacating his

original sentence, the district court[1] sentenced him to 240 months' imprisonment. Correa-Santos now appeals. We affirm.

In early 2010, law enforcement officials learned that Javier Lopez-Montejano and Mario Lopez were supplying large amounts of methamphetamine from Iowa to northwest Arkansas. During a telephone call intercepted by the Drug Enforcement Agency ("DEA"), Lopez-Montejano and Lopez identified Correa-Santos as a distributor. In a second intercepted call, Lopez asked Correa-Santos if he needed "cars," a code word for methamphetamine. Correa-Santos responded that he would answer later. In the interim, Lopez made the same offer to a second Arkansas distributor. The second distributor asked for five pounds of methamphetamine, and Lopez made arrangements to have the drugs sent via minivan on March 13, 2010.

On March 12, the day before the planned shipment, Lopez called Correa-Santos and explained that he had coordinated a delivery to Arkansas. Correa-Santos said that he did not need more methamphetamine because he had enough to continue distributing. The next morning, Missouri State Highway Patrol troopers stopped the minivan transporting the drugs to Arkansas. A trooper's drug dog alerted to the presence of narcotics, and a subsequent vehicle search revealed approximately five pounds of methamphetamine in a hidden compartment.

The DEA and Immigration & Customs Enforcement ("ICE") jointly investigated the methamphetamine-distribution ring responsible for this drug shipment. The investigation revealed that Correa-Santos had received five-pound shipments of methamphetamine every two to three months for two years. He then sold the drugs either directly or through another dealer. Telephone records showed that Correa-Santos had spoken with members of the methamphetamine-distribution

---

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

ring, including the second Arkansas distributor for whom the March 13 shipment from Lopez and Lopez-Montejano was intended. Investigators also learned that Correa-Santos and his relatives maintained several "stash" houses in Arkansas used by the methamphetamine-distribution ring. Finally, another member of the drug ring told authorities that Correa-Santos had obtained cell phones and vehicles for the distribution operation.

Based on this and other evidence, Correa-Santos was indicted for conspiracy to distribute more than 50 grams of methamphetamine mixture. He pleaded guilty. In determining Correa-Santos's advisory sentencing guidelines range, the district court adopted the Presentence Investigation Report's drug-quantity determination, which included the five pounds of methamphetamine intercepted on March 13. When Correa-Santos objected, the court responded by citing testimony offered by the Government's witness at the sentencing hearing. The court explained that this testimony established that the March 13 shipment was attributable to Correa-Santos because it was part of the same conspiracy and either known to him or reasonably foreseeable to him. The court then completed the guidelines' calculation and sentenced Correa-Santos to 240 months' imprisonment, five years of supervised release, and a $25,000 fine.

Correa-Santos successfully moved for relief under 28 U.S.C. § 2255 after his trial counsel failed to file a direct appeal upon his request. *United States v. Correa-Santos*, Crim. No. 10-50110-002, 2013 WL 6669411, at *1 (W.D. Ark. Dec. 18, 2013). The district court vacated Correa-Santos's original sentence and later imposed an identical sentence of 240 months' imprisonment, five years of supervised release, and a $25,000 fine. Correa-Santos timely appeals.

Correa-Santos argues solely that the district court erred at sentencing because it improperly included the March 13 shipment in its drug-quantity determination. We review the district court's drug-quantity determination for clear error. *United States*

*v. Jefferson*, 725 F.3d 829, 833 (8th Cir. 2013), *cert. denied*, 572 U.S. ---, 134 S. Ct. 1954 (2014). We reverse "only if the entire record definitely and firmly convinces us that a mistake has been made." *United States v. Garcia*, 774 F.3d 472, 474 (8th Cir. 2014) (per curiam) (quoting *United States v. Minnis*, 489 F.3d 325, 329 (8th Cir. 2007)).

Correa-Santos contends that the district court clearly erred by attributing the five pounds of methamphetamine to him because he took no action to further the March 13 shipment. This argument misconstrues the law. "In a drug conspiracy case, the district court may consider amounts from drug transactions in which the defendant was not directly involved if those dealings were part of the same course of conduct or scheme." *United States v. Walker*, 688 F.3d 416, 421 (8th Cir. 2012) (quoting *United States v. Bradley*, 643 F.3d 1121, 1126 (8th Cir. 2011)). If the dealings were part of the same course of conduct or scheme, the court may attribute the drug quantities to the defendant if it finds, based on a preponderance of the evidence, (1) "that the transaction or activity involving those drugs was in furtherance of the conspiracy" and (2) that the transaction or activity was "either known to that defendant or reasonably foreseeable to him." *United States v. Shakur*, 691 F.3d 979, 991 (8th Cir. 2012) (quoting *United States v. Brown*, 148 F.3d 1003, 1008 (8th Cir. 1998)).

Correa-Santos argues that the March 13 shipment was improperly attributed to him because the transaction was not part of the same course of conduct or scheme in which he admitted involvement. Rather, he contends that the March 13 transaction was part of a second, separate conspiracy. We disagree and thus find no clear error on this basis. At sentencing, the Government proved through the testimony of ICE Special Agent Paul Cottrell that the March 13 shipment was part of the same course of conduct or scheme as the conspiracy in which Correa-Santos admitted involvement. Agent Cottrell testified that both Correa-Santos and the intended recipient of the March 13 shipment were Arkansas methamphetamine distributors for Lopez-Montejano and Lopez's operation. Telephone records produced by the Government

-4-

showed that Correa-Santos spoke with Lopez and with the second Arkansas dealer. Additional testimony revealed that Correa-Santos and his relatives maintained stash houses that were accessible to members of the distribution ring, including the intended recipient of the intercepted shipment. Because the March 13 shipment included the same individuals as the conspiracy in which Correa-Santos admitted involvement and because the participants aimed to achieve the same objective—the distribution of methamphetamine in northwest Arkansas, we reject Correa-Santos's argument that the transaction was not part of the same course of conduct or scheme. *See Walker*, 688 F.3d at 422 ("Evidence 'that many of the same people [were] involved with each other and sought to achieve the same objectives' supports finding a single conspiracy." (alteration in original) (quoting *United States v. Mosby*, 177 F.3d 1067, 1071 (8th Cir. 1999)).

In addition, we are unpersuaded that Correa-Santos's act of rejecting a single shipment on March 12 was sufficient to effectuate his withdrawal from the conspiracy. Indeed, when Correa-Santos refused the methamphetamine offer, he told Lopez that he had enough to continue distributing. *See United States v. Spotted Elk*, 548 F.3d 641, 672-73 (8th Cir. 2008) ("To withdraw from a conspiracy at common law, a conspirator must show not only that he ceased activities in furtherance of the conspiracy, but also that he either made a 'clean breast' to the government or else communicated the fact of withdrawal to his co-conspirators in a manner reasonably calculated to reach them."). We therefore conclude that the district court did not clearly err when it treated the intercepted shipment as part of the conspiracy in which Correa-Santos admitted participating.

We next analyze whether the March 13 shipment was in furtherance of the conspiracy and whether it was known or reasonably foreseeable to Correa-Santos. We find that the district court did not clearly err in determining that the shipment was in furtherance of the conspiracy. In his guilty plea, Correa-Santos admitted that he participated in a conspiracy involving a known distributor in Iowa (Lopez) to

distribute methamphetamine in northwest Arkansas. And Agent Cottrell testified that Lopez orchestrated the delivery of the five-pound shipment in response to a request from a second Arkansas dealer. This drug shipment was designed to facilitate the distribution of methamphetamine in the region. It thus furthered the conspiracy, and we see no clear error on this basis.

Finally, we reject Correa-Santos's contention that the district court clearly erred when it found that Correa-Santos either knew of or reasonably could have foreseen the March 13 shipment. The facts of this case are easily distinguishable from those in which a district court erroneously attributed all drug quantities implicated in a given conspiracy to a defendant based solely on his conspiracy conviction. *See, e.g.*, *United States v. Miller*, 698 F.3d 699, 709 (8th Cir. 2012). Agent Cottrell testified that Correa-Santos regularly received five-pound shipments of methamphetamine from the operation for two years. And Agent Cottrell testified that Lopez informed Correa-Santos of the shipment planned for March 13. These circumstances, combined with Correa-Santos's ties to the second Arkansas dealer, which included telephone conversations and shared access to the stash houses, support the district court's conclusion that Correa-Santos either knew of or reasonably could have foreseen the five-pound shipment. The district court specifically referenced Agent Cottrell's testimony in its response to Correa-Santos's objection at sentencing, and we therefore find no clear error on this basis. *See United States v. Montanye*, 996 F.2d 190, 192 (8th Cir. 1993) (en banc) ("[W]hen a conspiracy defendant objects that the quantity of drugs attributed to the defendant in the [presentence investigation report] are not reasonably foreseeable to the defendant, the district court must make a foreseeability finding about the objecting defendant."); *cf. Miller*, 698 F.3d at 709 (vacating sentence because the district court's only rationale for including a drug quantity in its calculation was that the defendant had been convicted of conspiracy and therefore "should be charged with the entire amount of those drugs" linked to the conspiracy).

For the above reasons, we conclude that the district court did not commit clear error by including the five-pound methamphetamine shipment in the drug quantity attributed to Correa-Santos at sentencing. We affirm.

_____