**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10660 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-01865-ROS-5 |
| v. | |
| RALPH DOUGLAS MORENO, AKA Culling Raphael Moreno, AKA Rafael Culling Moreno, AKA Ralph Moreno, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Senior District Judge, Presiding

Argued and Submitted May 11, 2015
San Francisco, California

Before: THOMAS, Chief Judge, and BENAVIDES** and OWENS, Circuit Judges.

This is a direct criminal appeal from Appellant Ralph Douglas Moreno's ("Moreno") convictions for conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846; possession with intent to distribute

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\** The Honorable Fortunato P. Benavides, Senior Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Moreno also challenges the district court's order to forfeit $75,366 in illegal drug proceeds.  *See* 21 U.S.C. § 853.  Finding no reversible error, we affirm.

I.    Severance Motion

Moreno contends that the district court erred in denying his motion to sever his trial from that of his co-defendant, Roman Borquez ("Roman"), a prison inmate and member of the Arizona Mexican Mafia.  Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in . . . consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  The district court's denial of a motion to sever is reviewed for abuse of discretion. *United States v. Decoud*, 456 F.3d 996, 1008 (9th Cir. 2006).[1]  "The test for abuse of discretion by the district court is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a

---

[1]  The government contends that although Moreno made a general mistrial motion at the close of the evidence, he failed to specifically renew the motion to sever at that time.  A motion to sever must be renewed at the close of evidence or it is waived.  *United States v. Alvarez,* 358 F.3d 1194, 1206 (9th Cir. 2004).  Nonetheless, Moreno correctly asserts that this court recognizes exceptions to this requirement.  *United States v. Sullivan*, 522 F.3d 967, 981 (9th Cir. 2008).  More specifically, this court has excused the requirement when the "defendant can show either that he diligently pursued severance or that renewing the motion would have been an unnecessary formality."  *Id.* (internal quotation marks and citation omitted).  In the case at bar, we need not determine whether the requirement should be excused because, assuming *arguendo* that it should, we conclude that Moreno has not shown that the district court abused its discretion in denying the motion to sever.

2

separate trial." *Id*. (internal quotation marks and citations omitted). As the Supreme Court has recognized, in the federal system, there is a preference for joint trials of co-defendants that have been charged in the same indictment. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). To succeed on a motion to sever, a defendant must carry the "heavy burden in demonstrating that [his] joinder with the other defendant[ ] was so manifestly prejudicial that it outweighed the dominant concern with judicial economy." *United States v. Patterson,* 819 F.2d 1495, 1502 (9th Cir. 1987) (internal quotation marks and citations omitted).

Moreno contends that by failing to grant the motion to sever, the district court admitted unfairly prejudicial evidence against him. Moreno first points to evidence that his co-defendant Roman directed a conspiracy to smuggle heroin into prison using greeting cards. Also, there was testimony that his co-defendant was a gang member and that gang members commit a disproportionate amount of violent crimes in prison. In addition, there was evidence that his co-defendant controlled marijuana and methamphetamine trafficking in 2010, and there was no evidence that Moreno was involved in marijuana or methamphetamine conspiracies in 2010.

There are two conspiracies charged in the indictment. Count 1 is the only count in which both Moreno and Roman are charged. That count alleges that between July 8 and August 22, 2011, Moreno, Roman, Roman's brother, Javier Borqez ("Javier"), Joel Kupihea ("Kupihea"), and Richard Flores ("Flores") conspired to possess with intent to distribute 50 grams of methamphetamine. The evidence at trial showed that in 2010, Roman, who was in prison, conspired with his two brothers, Javier and Lawrence Borquez ("Lawrence"), and Marci Shaw ("Shaw") to obtain methamphetamine and deliver it to Kupihea in Hawaii on two occasions. Subsequently, in August 2010, Roman had Shaw and Javier attempt to find a supplier

3

for another drug deal with Kupihea. At that point, prison officials discovered that Roman was dealing in drugs and cut off his access to phone and email for several months. Subsequently, in June 2011, Roman had Shaw contact Kupihea to sell him more methamphetamine. On July 7, Kupihea arrived in Phoenix and met with Shaw and Javier. Javier called Flores, who obtained the drugs from a man called "Vince." Flores delivered the drugs to Javier, and the next day they mailed the package of drugs to Hawaii. The package was intercepted by law enforcement. At this point, Shaw began working as a confidential informant, and the FBI decided to use her to discover the supplier. The FBI provided Shaw with money and instructed her to contact Javier and ask him to obtain drugs from Flores. Shaw gave Javier the money, and he contacted Flores. At this point, Flores was unable to obtain drugs from Vince. Flores then called Moreno, who agreed to supply the drugs. The FBI followed Flores to Moreno's house and observed Flores leave with a package in his hands. After Flores delivered the drugs to Shaw, she brought the package to an undercover officer. A few weeks later, Moreno was arrested.

Relying on this evidence, Moreno points out that, at the time he became involved in the offense, the FBI was using Shaw to find the drug supplier. Under those circumstances, he argues that there "was a complete break between Roman and any criminal activity involving [Shaw], much less Moreno." Reply brief at 2. Moreno is correct that there is no evidence that he dealt directly with Roman. Nonetheless, even if Moreno had been tried separately, he has not shown that the evidence—that Roman initiated the conspiracy and directed Shaw's activities—would be inadmissible at his separate trial. *Cf. United States v. Kearney,* 560 F.2d 1358, 1362 (9th Cir.1977) (rejecting claim of misjoinder of conspiracies, explaining that "[i]t need not even be shown that an alleged co-conspirator knew all of the purposes of and all of the

4

participants in the conspiracy"). Thus, he has failed to show prejudice that would establish improper joinder based on the evidence introduced in support of Count 1 of the indictment.

With respect to the second conspiracy charge, Count 6 involves Roman's attempt to bring heroin into the prison, and it is undisputed that Moreno had nothing to do with those charges. If Moreno had been tried separately, the evidence regarding Roman's heroin conspiracy and gang affiliation would not likely have been relevant evidence admissible against Moreno. However, that is not the proper inquiry. Even if evidence of Roman's heroin conspiracy and prison gang affiliation is prejudicial, that does not demonstrate that the court abused its discretion in denying the severance motion. *United States v. Vaccaro,* 816 F.2d 443, 448 (9th Cir. 1987), *abrogated on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988). Because "some prejudice is inherent in any joinder of defendants, if only 'some' prejudice is all that need be shown, few, if any, multiple defendant trials could be held." *Id.* (citations omitted). "The prejudice of a joint trial must be such as to violate a defendant's fair trial rights: *i.e.*, unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of the right of confrontation, lack of separate counsel among defendants with conflicting interests, or failure to instruct the jury properly on the admissibility of evidence as to each defendant." *Id*. at 449. Moreno has not shown that the joinder violated any of his fair trial rights.

Moreover, the court instructed the jury with respect to how to consider the evidence against both of the defendants as follows:

> You are here only to determine whether the defendants are guilty or not guilty of the charges in the indictment. The defendants are not on trial for conduct or offenses not charged in the indictment.

5

Specifically, it is not alleged that Ralph Moreno is or was [a] member of a prison or street gang. Further, it is not alleged that Ralph Moreno participated with others in the prior methamphetamine transactions that preceded the charged indictment in this case.

A separate crime is charged against one or more of the defendants in each count. The charges have been joined for trial. You must decide the case of each defendant on each crime charged against that defendant separately. Your verdict on each count as to any defendant should not control your verdict on any other count or as to any other defendant.

This court has explained that if a court carefully instructs the jury to separate the evidence against the co-defendants, "severance is unnecessary because the prejudicial effects of the evidence of co-defendants are neutralized." *Patterson*, 819 F.2d at 1503 (citation and internal quotation marks omitted). Thus, the district court did not abuse its discretion in denying the motion to sever.

II.    Rule 404(b)

Moreno next contends that the district court erred in allowing the government to introduce evidence that his co-defendant Roman smuggled heroin into prison and trafficked in marijuana and methamphetamine in 2010 in violation of Federal Rule of Evidence 404(b). Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nonetheless, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The admission of Rule 404(b) evidence is reviewed for abuse of discretion. *United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010).

6

Moreno admits that while some or all of the challenged evidence might be properly introduced under Rule 404(b) as evidence showing *Roman's* motive, opportunity, and preparation, the "evidence had absolutely no connection to Moreno." In other words, Moreno is essentially reurging his argument that the district court erred in denying his motion to sever, which we have already rejected. In any event, with respect to other crimes, wrongs, or acts of the defendants, the district court instructed the jury as follows:

> You have heard evidence that the defendants separately committed other crimes, wrongs, or acts not charged here, including information regarding gang membership and association. You may consider this evidence only for its bearing, if any, on the question of that specific defendant's intent, motive, opportunity, preparation, plan, knowledge, absence of mistake, and for no other purpose. You may not consider this evidence as evidence of guilt of the crime for which either defendant is now on trial.

In addition, as previously set forth, the court instructed the jury that the "defendants are not on trial for conduct or offenses not charged in the indictment." This court has explained that: "[l]imiting instructions may reduce or eliminate prejudice which would otherwise occur." *United States v. Bradshaw,* 690 F.2d 704, 709 (9th Cir. 1982). In light of the limiting jury instructions, Moreno has failed to demonstrate that the district court abused its discretion in allowing the evidence against Roman to be introduced at trial. *Cf. United States v. Mayo,* 646 F.2d 369, 372 (9th Cir. 1981) (concluding that, in light of the limiting jury instructions and the evidence against the defendant, the government's improper use of the co-defendant's Rule 404(b) evidence against the defendant was harmless).

III. Forfeiture

Moreno next argues that the district court failed to give him notice and an opportunity to contest the forfeiture of over $75,000 in cash seized from his residence

7

in violation of Federal Rule of Criminal Procedure 32.2(b)(2), thereby denying him due process. Although this court generally reviews de novo a district court's interpretation of federal forfeiture law, *United States v. $493,850.00 in U.S. Currency,* 518 F.3d 1159, 1164 (9th Cir. 2008), because Moreno did not make a Rule 32.2 objection, we review the claim for plain error. *See United States v. Wilkes*, 662 F.3d 524, 549–50 (9th Cir. 2011) (explaining that because the defendant failed to timely request a jury determination of criminal forfeiture as required by Rule 32.2(b)(4), the claim would be reviewed for plain error). Under plain error review, a defendant must show that the plain or obvious error affected his substantial rights by affecting the outcome of the proceedings. *United States v. Olano*, 507 U.S. 725, 734–35 (1993); Fed. R. Crim. P. 52(b).

### A. Standing

The government argues that Moreno does not have standing to contest the forfeiture because he has admitted that he had no ownership in the property that was seized.[2] Moreno's memo to the district court asserted that $71,569 of the seized money belonged to his wife, and that he "never had a forfeitable interest in those funds, so that money should be returned to Mrs. Moreno." The memo further provided that $4,500 of the cash belonged to him. He claimed that the money was used to buy and sell automobile parts. As Moreno contends, state law is applied to determine the ownership interest in the property. *United States v. Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996). After the ownership interests have been determined, federal law applies to determine whether the property interests must be forfeited to the government. *Id.* According to the PSR, Moreno and his wife, Wilma, were married in 1983 in Phoenix, Arizona and were living together in Arizona at the time of the

---

[2] This court reviews questions of standing *de novo. United States v. Kiefer*, 760 F.3d 926, 929 (9th Cir. 2014).

offense in 2011.  Arizona is a community property state.  *See* Ariz. Rev. Stat. Ann. § 25-211 ("All property acquired by either husband or wife during the marriage is the community property of the husband and wife. . . .").  In the memo, Moreno asserted that the money was not illegal drug proceeds, but instead argued that his wife's money consisted of casino winnings and a monetary settlement she had received due to an automobile accident.  On appeal, Moreno contends that he has an ownership interest in his wife's community property, and thus, he has an interest in the entire amount of cash seized from their residence.[3]  *Cf. Lester*, 85 F.3d at 1412–14 (holding that wife's one-half interest in portion of substituted community property that was not linked to criminal activity was not liable to criminal forfeiture imposed on her husband).  Under these circumstances, Moreno has standing to contest the forfeiture of the money that was seized.  Accordingly, we reject the argument that Moreno has no standing to contest the forfeiture.

---

[3]  We note that to the extent that Moreno has made inconsistent claims with respect to having a right to the entire amount of the seized money, we do not use our discretion to invoke the equitable doctrine of judicial estoppel.  We decline to do so because we ultimately hold that Moreno has not shown that the district court's error warrants relief under plain error review and thus, allowing the inconsistent claims as to the amount of money does not permit Moreno to "derive an unfair advantage or impose an unfair detriment on the opposing party."  *United States v. Liquidators of European Fed. Credit Bank,* 630 F.3d 1139, 1148 (9th Cir. 2011) (internal quotation marks and citations omitted).  Even if we were to conclude that Moreno is estopped from claiming a right to the entire sum of cash, he would still have standing to argue that the previously claimed $4,500 was wrongfully forfeited.  That standing would exist even if Moreno's disclaimer of the forfeiture in the remaining sum of money would preclude him from taking a contrary position on appeal.

B.     Notice

It is undisputed that the district court failed to issue a preliminary order of forfeiture prior to sentencing as required by Federal Rule of Criminal Procedure 32.2(b)(2)(B).   Nonetheless, we conclude that this obvious error did not affect Moreno's substantial rights because he had actual notice of the forfeiture.  Per Rule 32.2(a), the second superseding indictment contained the forfeiture allegation that gave Moreno notice that the government was seeking forfeiture of any property or proceeds from the charged offenses, including the $75,366 seized from his residence.[4] Additionally, during the trial, the government introduced evidence showing that the FBI had conducted an analysis of the Morenos' finances.  An FBI agent testified that the investigation revealed that between 2003 and 2011, Moreno had "acquired and applied" $125,000 in excess of their legitimate, reported income.  This evidence was admitted to demonstrate that the seized money was illegal drug proceeds.

In response, Moreno called three witnesses to testify during the presentation of his defense.  The first witness was a former Assistant United States Attorney who had been assigned to work on the parallel civil forfeiture proceedings with respect to the money at issue in the instant case.  That witness explained how forfeiture proceedings were conducted.  Moreno also called his son-in-law, Joseph Nillo, who testified that the firearms seized by the government were his and not Moreno's.  Moreno testified regarding the source of the seized funds.  He testified regarding the various jobs he had over the years.   After he injured his back, he received a small worker's compensation check every month.  As a result of a second injury, Moreno received two lump sum checks, one for $9,000 and one for approximately $12,000.  He and his wife had winnings from gambling at casinos.  He also restored cars and then sold them

_____

[4] On appeal, Moreno challenges only the forfeiture of the $75,366.

10

for a profit. Moreno testified that his wife had received a large settlement from an insurance company because she had been involved in a car accident. He admitted copies of the checks ($42,000 and $9,975) into evidence. Moreno and his wife cashed the checks, spent some of the money, and stored the remaining money in their home. Finally, Moreno testified that the money seized by the government was not illegal drug proceeds.

The PSR, which was prepared approximately a month prior to the sentencing hearing, also stated that the government was seeking forfeiture of $75,366. Indeed, in his written objections to the PSR, which were filed prior to the sentencing hearing, Moreno expressly acknowledged that the government was seeking forfeiture of the seized money. Moreno asserted that the "vast majority of that money is attributable to" his wife. Moreno also referred to the pending civil proceeding in which the government was seeking forfeiture of the same funds. Thus, although the preliminary order of forfeiture was not issued in accordance with Rule 32, because Moreno had actual notice of the forfeiture, Moreno cannot show that the error affected his substantial rights.

C.      Opportunity to Contest Forfeiture of Money

Moreno also contends that he did not have the opportunity to contest the forfeiture of the money. Rule 32.2(b)(1)(B) provides that "[i]f the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty." However, Moreno did not request a hearing after the jury verdict of guilty. As such, the rule did not require that a hearing be conducted. Although Moreno could have contested the forfeiture at the sentencing hearing, he failed to even object to the district court's verbal order of forfeiture of the money at the sentencing hearing. Moreover, as set forth above, Moreno had previously

11

introduced testimony and evidence during his defense at trial in an effort to show that the seized cash was derived from legitimate sources and was not illegal drug proceeds. Therefore, because Moreno did contest the forfeiture of the money before the district court at trial, he has not shown how the failure to conduct a hearing after the guilty verdict affected his substantial rights.

Finally, Moreno contends that the district court did not have the authority to issue the order of forfeiture at sentencing. As we have explained above, Moreno has failed to show that the district court plainly erred, much less that any error deprived the court of the authority to order forfeiture of the seized cash.[5]

---

[5] In response to the government's post-sentencing motion for a belated order of forfeiture, Moreno filed a memorandum in which he argued that the notice of appeal had divested the district court of jurisdiction. He apparently was arguing that the notice of appeal divested the court of jurisdiction to enter the belated "preliminary" forfeiture order. *Compare United States v. Shakur,* 691 F.3d 979, 986–89 (8th Cir. 2012) (holding that a district court's failure to issue a timely order of forfeiture either prior to sentencing or within the 14-day correction period under Rule 35 renders it without jurisdiction to enter a forfeiture order) *with United States v. Martin,* 662 F.3d 301, 307–10 (4th Cir. 2011) (holding that Rule 32's requirement that a forfeiture order be included in a final judgment is not jurisdictional but rather a time-related directive). Here, unlike the written judgment in *Shakur,* the district court's judgment detailed the property to be forfeited. Accordingly, we need not reach this issue because the district court had previously entered an essentially identical order of forfeiture in the written criminal judgment prior to Moreno's filing his notice of appeal.

For the above reasons, the district court's judgment is AFFIRMED.[6]

---

[6] We note that pending before this court is a civil forfeiture proceeding with respect to the same money that is at issue on this appeal. *United States v. $75,366.00*, 14-15733. Moreno's wife is a party and claimant to the money in such civil appeal. While we have reviewed Moreno's claim for plain error, we express no opinion herein with respect to the merits of the civil forfeiture proceeding. We express no opinion as to any effect the previously discussed violation of Rule 32.2 may have had with respect to Moreno's spouse's rights to the seized money or the validity of the forfeiture as to Moreno's spouse's claimed interest.