RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-2469

SIDNEY DOWL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cr-20568-1—Paul D. Borman, District Judge.

Decided and Filed:  April 22, 2020

Before:  SUTTON, McKEAGUE, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Kevin M. Schad, FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for
Appellant.  Daniel R. Hurley, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan,
for Appellee.

_____

## OPINION

_____

PER CURIAM.  When Sidney Dowl violated the terms of his supervised release, the
district court sent him back to prison for 11 months.  During Dowl's revocation hearing, the
district court gave him several opportunities to explain his conduct and offer evidence in
mitigation.  But it never directly solicited Dowl to ask if he wanted to make a statement on his
behalf, what's called an opportunity for allocution.  Dowl did not raise any objection during his

revocation hearing, even after being given a chance to do so at the end of it. Reviewing his denial-of-allocution claim for plain error, we affirm.

On June 26, 2017, Sidney Dowl pleaded guilty to one count of defrauding the United States by presenting false tax returns. *See* 18 U.S.C. § 286. He received a sentence of 30 months of imprisonment followed by a 24-month term of supervised release.

Dowl served his stint in prison without incident. But his supervised release did not go as smoothly. On October 1, 2019, an arrest warrant alleged that Dowl committed four new state criminal law violations; failed to inform his probation officer that he had police contact; communicated with his co-defendant despite instructions to the contrary; failed to make payments on his restitution, fine, or special assessment; and failed to get a job.

On December 12, 2019, the district court held a hearing. The court reviewed the evidence about each violation. It then gave Dowl several opportunities to tell his side of the story, which he took advantage of. After reviewing the evidence, the court deferred judgment on three of the four new state criminal law violations and dismissed the claim alleging the fourth state criminal law violation. It also found Dowl gainfully employed. But it found that Dowl failed to notify his probation officer about contact with the police, impermissibly communicated with his co-defendant, and did not pay his fines. After considering the relevant sentencing factors under 18 U.S.C. § 3553(a), the district court sent Dowl back to prison for 11 months.

At the end of the hearing, the court gave Dowl and his attorney the *Bostic* opportunity to raise any objections to the hearing. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Dowl had none.

On appeal, Dowl argues that the court committed reversible error by not directly addressing him to solicit an allocution.

*Plain-error review applies to his claim.* When a district court errs in a criminal case, the defendant must timely object in order to preserve claims related to that error on appeal. *See* Fed. R. Crim. P. 51(b); *see United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc). If the defendant fails to do so, he forfeits the claim, requiring him to show "plain error" on

appeal to obtain relief. *See* Fed R. Crim. P. 52(b). That means he has the burden of identifying an error, demonstrating it was "plain," showing that it "affected [his] substantial rights," and proving it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018) (quotations omitted). The Supreme Court has cautioned against any "unjustified exception" to that standard, *Puckett v. United States*, 556 U.S. 129, 136 (2009), allowing departures only for a "very limited class" of "structural errors," *United States v. Marcus*, 560 U.S. 258, 263 (2010).

A denial-of-allocution claim is not a promising candidate for falling within that "very limited class." The United States Supreme Court has never identified a constitutional right to allocute. *See Hill v. United States*, 368 U.S. 424, 428 (1962). And our court has concluded there is no such constitutional right. *United States v. Richardson*, 948 F.3d 733, 744 (6th Cir. 2020). The right instead comes from the Rules of Criminal Procedure. That explains why the denial of the right to allocution is not a "fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428. And that explains why the circuits have held that plain error review applies to forfeited denial-of-allocution claims. *See, e.g.*, *United States v. Adams*, 252 F.3d 276, 278–85 (3d Cir. 2001); *United States v. Muhammad*, 478 F.3d 247, 249 (4th Cir. 2007); *United States v. Reyna*, 358 F.3d 344, 350–51 (5th Cir. 2004) (en banc); *United States v. Luepke*, 495 F.3d 443, 446–48 (7th Cir. 2007); *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1137 (10th Cir. 2017) (en banc); *United States v. Prouty*, 303 F.3d 1249, 1251 (11th Cir. 2002). Others have suggested that they favor such an approach. *See, e.g.*, *United States v. Robertson*, 537 F.3d 859, 863 (8th Cir. 2008); *see also, e.g.*, *United States v. Rosenbauer*, 47 F. App'x 606, 607 (2d Cir. 2002) (order).

Some confusion exists over whether our circuit has taken a different path. Dowl claims that *United States v. Wolfe* resolved the point in the context of an appeal from an original sentence, as opposed to a revocation of supervised release. 71 F.3d 611, 614 (6th Cir. 1995). But the decision says no such thing. It applies de novo review to the claim, to be sure. But it never addresses any forfeiture arguments, and no one sought plain error review so far as the decision shows. In support of its decision, *Wolfe* points to one case: an out-of-circuit habeas

case that does not concern forfeiture or plain error review.  *See United States v. Taylor*, 11 F.3d 149, 151 (11th Cir. 1994) (per curiam).

The later cases do not address the point directly either.  None examines the point in the context of a claim of plain error after the trial court gave the *Bostic* warning, a requirement our court implemented in 2004.  *See, e.g.*, *United States v. Griffin*, 530 F.3d 433, 437 (6th Cir. 2008); *United States v. Haygood*, 549 F.3d 1049, 1054 (6th Cir. 2008); *United States v. Green*, 305 F.3d 422, 437 (6th Cir. 2002).  And many cases apply plain error review to forfeited claims that a district court impeded or restricted the right to allocute in some way.  *See, e.g.*, *United States v. Richardson*, 948 F.3d 733, 744 (6th Cir. 2020); *United States v. Carter*, 355 F.3d 920, 926 & n.3 (6th Cir. 2004); *see also, e.g.*, *United States v. Vujovic*, 635 F. App'x 265, 271–72 (6th Cir. 2015); *United States v. Barnett*, 460 F. App'x 582, 592 (6th Cir. 2012) (per curiam); *United States v. Johnson*, 340 F. App'x 309, 310–11 (6th Cir. 2009).

Be that as it may, we need not resolve the point today.  Either way, there is no good reason to ignore the forfeiture rules in this distinct context:  denial-of-allocution claims arising out of supervised release revocation hearings.  These hearings differ in material ways from original sentencing hearings.  During a revocation hearing, defendants do not enjoy "the full panoply of rights" available at an original sentencing hearing.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  A court, for example, may revoke supervised release for non-criminal conduct. *See Johnson v. United States*, 529 U.S. 694, 700 (2000).  It may do so on its own authority based only on a preponderance of the evidence.  *See id.*  No jury is required.  *See id.*  And proof beyond a reasonable doubt is not required either.  *See id.*  Should the government press new charges based on the conduct that led to the revocation of supervised release, double jeopardy does not apply.  *See id.*  The serial differences between revocation hearings and original sentencing hearings confirm one thing:  Whatever the right approach to allocution at an original sentencing hearing, there is no legitimate basis for ignoring the traditional plain-error rules in a revocation hearing.

*No plain error occurred.*  Dowl's first problem is that it's doubtful any error occurred. The pertinent Criminal Rules distinguish between allocution during original sentencing and allocution during supervised release revocation hearings.  Rule 32 governs original sentencing

hearings and requires the court to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). That explains why we have held that in order to fulfill Rule 32's requirements, "the district court judge must personally and unambiguously invite the defendant to speak [o]n his own behalf." *United States v. Thomas*, 875 F.2d 559, 563 (6th Cir. 1989). Rule 32.1 does not contain a similar requirement. Fed. R. Crim. P. 32.1(b)(2)(E). It says only that a defendant "is entitled to . . . an opportunity to make a statement and present any evidence in mitigation." *Id.* Differences in language usually lead to differences in meaning. The text of Rule 32.1 suggests it does not impose a direct-address requirement. *See United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 836 (2001).

Other differences between the Rules support this view. Rule 32 says that a court "must . . . address the defendant personally" to solicit allocution from him. Fed R. Crim. P. 32(i)(4)(A)(ii). By contrast, Rule 32.1(b)(2) identifies only one thing a court *must* do: "hold [a] revocation hearing within a reasonable time in the district having jurisdiction." *Id.* 32.1(b)(2) (emphasis added). The remainder of Rule 32.1(b)(2) describes what each defendant "is entitled to." *Id.* Among those entitlements is the "opportunity to make a statement." *Id.* 32.1(b)(2)(E). Obligatory language directed toward the court tends to impose unyielding procedural requirements "impervious to judicial discretion," *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998), while language of entitlement directed to defendants places them in the customary position of having to assert the right to obtain the benefit.

Other entitlements in Rule 32.1 point in the same direction. The preceding provision states that each defendant is entitled to "notice of [his] right to retain counsel." Fed. R. Crim. P. 32.1(b)(2)(D). By singling out "notice," the Criminal Rules draw a distinction between having a right (on the one hand) and having a right to *notice about* the availability of a right (on the other). If Rule 32.1 required defendants to receive personal notice about allocution, it could have said so expressly, just like the preceding provision did and just like the direct-address requirement in Rule 32 did.

*United States v. Waters*, 158 F.3d 933, 942 (6th Cir. 1998), does not alter this conclusion. It invoked our "supervisory powers" to "require the district courts in our circuit to provide

defendants with an opportunity to allocute before imposing a sentence for a violation of supervised release." *Id.* at 944; *see also United States v. Curtis*, 237 F.3d 598, 604–05 (6th Cir. 2001). But we decided *Waters* before 2005, when the Criminal Rules still remained silent about the allocution rights defendants enjoyed during supervised release revocation hearings. The 2005 Amendments displaced the ambiguity that *Waters* mustered our "supervisory powers" to fill, and in doing so Rule 32.1(b) created a right of allocution directed to the defendant without including the direct-address requirement in Rule 32.

All in all, it's far from clear that the court violated Rule 32.1. The rule gives the defendant an "opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(E). Dowl received just that. That observation, even so, comes with this caution and suggestion. It will not always be obvious what constitutes an adequate "opportunity to make a statement," and it's hard to see the downside of a personal invitation anyway. *Id.* Better "as a matter of good judicial administration," it seems to us, that courts "unambiguously address themselves to the defendant" in all cases—whether original sentencing hearings or supervised release revocation hearings. *Green v. United States*, 365 U.S. 301, 305 (1961); *see Thomas*, 875 F.2d at 561. Call this an ounce of medicine worth a pound of cure.

The second problem, the dispositive problem, is that any error did not prejudice him. The district court invited Dowl's commentary at several points in the hearing, and he used it. Dowl offered evidence that he had secured gainful employment and he justified his failure to produce documentation to that effect. Dowl explained to the court that he "grew up roofing all [his] life," "went to school at Focus Hope for it," and "ha[d] [a] builder's license." R. 123 at 23. Because he was "just reestablishing [his] business," he struggled to secure "large jobs," and the jobs he could land mostly involved "under the table" payment that did not generate receipts. *Id.* at 16–17. Still, he pointed out that he "showed [a] financial audit" to the government and provided "bank account statements" demonstrating "some activity." *Id.* at 23. That included activity in his dedicated "commercial account with Chase." *Id.* at 16. And while he had no driver's license, he explained how he managed to get around: His "employer [was] driving [him] back and forth to work." *Id.* at 15. At least some of this advocacy and explanation paid off. The district court found for Dowl on the gainful employment violation.

Dowl also offered a justification for his continued contact with his co-defendant. While acknowledging that the terms of his supervised release prohibited contact with her, he noted that he and his co-defendant had "been together for 22 years" and shared "three houses together." *Id.* at 22. He also sought sympathy, saying of his codefendant that "[s]he's all the family that I have; I'm all the family that she has." *Id.* While the court found that Dowl violated his supervised release conditions, he still had a chance to explain why he deserved lenity.

It also bears noting that, when Dowl spoke, the court allowed him to address any topic he wished for as long as he wished. It permitted him to allocute (uninterrupted) about his contact with his co-defendant, about the status of his monthly court-ordered payments, and about his present employment. It's easy to see how the court could think these allocutions satisfied Criminal Rule 32.1. On this record, we can't see how the court's conduct adversely affected Dowl's "substantial rights." *See United States v. Olano*, 507 U.S. 725, 732 (1993) (quotation omitted). Confirming the point, Dowl does not offer any statement today that he wishes he could have made then.

We affirm.