**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 26, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

IVAN LUJAN,

    Defendant - Appellant.

No. 21-2107
(D.C. No. 1:15-CR-04009-MV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Ivan Lujan appeals the district court's judgment finding that he violated the terms of his supervised release by unlawfully possessing a controlled substance, possessing alcohol, and having access to dangerous weapons. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Lujan pleaded guilty in 2015 to being a felon in possession of a firearm.  He was sentenced to 51 months' imprisonment, followed by three years' supervised release.  Lujan commenced his period of supervision in January 2020 and did not violate any conditions during the first year.  In March 2021, however, Lujan quit his job at a convenience store and failed to notify his probation officer (PO) of the change in his employment status.  The PO also learned from the local police that Lujan had been living at a trailer that was not his authorized residence.  The PO searched that trailer on June 9, 2021.  In a bedroom she found Lujan's clothing and other personal belongings, as well as two knives.  The PO also found a small amount of heroin and several large bottles of alcohol elsewhere in the trailer.  Lujan was arrested and charged with violating the conditions of his supervised release.

At a revocation hearing, the district court noted Lujan was charged with five grade C violations, which, if proven, would result in a sentencing guidelines range of four to ten months' imprisonment.  Lujan admitted two of the charges:  that he failed to notify his PO of his change in residence and also failed to notify her of his change in employment.  But he denied that he violated three other conditions by (1) unlawfully possessing a controlled substance, (2) using or possessing alcohol, and (3) owning, possessing, or having access to dangerous weapons.

Lujan's PO was the sole witness at the hearing.[1]  She testified that Lujan had consistently reported to her in 2020.  But beginning in mid-March 2021 her communication with him became irregular.  He did not contact her, and he failed to respond to her voice and text messages.  At some point Lujan told the PO that his phone was not working.  But even after giving her a new phone number, he still did not respond to her communications.  The PO asked Lujan's therapist to tell him he needed to get in touch with her.  But he still failed to contact the PO, while telling the therapist that he had.  Ultimately, the PO resorted to leaving messages with Lujan's mother, after which he would eventually contact her.

The PO testified about the search of Lujan's unauthorized residence, describing what was found and where.  Lujan's clothes and shoes were in a bedroom closet.  In that same room were a dagger knife, a large-bladed knife, a gun holster in a nightstand next to the bed, and pieces of mail, bank statements, and medical treatment records bearing Lujan's name.  One of the bank statements showed a $14,000 deposit, which he had withdrawn two days later.  When asked to explain that deposit, Lujan told the PO it was a disbursement related to a vehicle.  Two flat screen televisions were mounted on the bedroom wall, one of which displayed the feeds from four cameras on the property.  The search also uncovered a small amount of heroin in a tin container in the couch in the living room and a cabinet filled with large bottles of hard liquor in the kitchen.

---

[1] Much of the PO's testimony was elicited by the district court's own questions.

During the search, the PO spoke to another resident of the trailer, who lived there with her teenage daughter. The other resident confirmed that Lujan had stayed at the trailer, but she was hesitant to provide further information about him. Based on the woman's demeanor, the PO concluded that she was either protecting Lujan or did not want to get involved.

The PO also confiscated Lujan's cell phone, but she was unable to search it because he provided incorrect passwords. In addition, during a previous search of Lujan's authorized residence, the PO had found multiple memory cards for Lujan's phone.

When the PO confronted Lujan about his unauthorized residence, he denied living there. He told the PO that the trailer was the home of Theresa Pacheco, his former manager at the convenience store, with whom Lujan was in an intimate relationship. Despite Lujan's denial that he was living there, the PO found keys to the trailer in a search of Lujan's car, and she learned that Lujan and Pacheco had signed a year-long lease for the trailer beginning in September 2020. Lujan told the PO he did not know why his name was on the lease. Although the PO could not confirm the number of days Lujan had spent at the trailer versus his authorized address, she stated that the only time she encountered Lujan at his approved residence was when she had asked him to be there. The PO concluded that he had been residing at both addresses. The PO also testified that Pacheco is a convicted felon.

The PO testified about the process for approving a residence for a person on supervision. She does a home inspection and talks to all other residents to determine if a particular residence is suitable. If other residents are not willing to keep alcohol and illicit drugs out of the home, the PO will ask the person under supervision to find a different residence. She opined that the trailer was not a residence that Lujan wanted to be approved.

The PO further testified that a person on supervision must report all vehicles owned and used. But Lujan failed to report all of the vehicles he was using. In particular, she did not know which vehicle Lujan sold to reportedly obtain the $14,000 he had deposited in his bank account.

Following the testimony, the district court noted Lujan's admission that he had violated his supervised release conditions by failing to notify his PO before changing his employment and his residence. The court also found the government had met its burden to show by a preponderance of the evidence that Lujan violated the additional conditions precluding the unlawful possession of a controlled substance, the possession of alcohol, and having access to dangerous weapons.

The government asked the district court to impose a sentence of four months' imprisonment, which was the bottom of the applicable guidelines range, followed by 32 months of supervised release. Lujan asked the court to hold the revocation petition in abeyance for 90 days, pointing to his compliance with all conditions while on release following his arrest on the current charges. Lujan's counsel also argued:

> [T]here really is no way of knowing whether or not he knew that that
> contraband was present. We don't know how long it was there. We don't
> know when he lived there or stayed there. We don't know if the knife and
> the alcohol [were] brought in at a time after he left. There's no constructive
> possession because there's no knowledge that those things were there when
> [he] was there.

R., Vol. 3 at 61-62.

The district court refused Lujan's request to hold the petition in abeyance and instead adopted the government's recommendation and imposed a four-month prison sentence, followed by 32 months of supervised release. The court stated that it did not believe, based upon all of the evidence presented, that Lujan lacked knowledge of the knives, heroin, and alcohol in the trailer. It pointed to what it characterized as the "troubling" circumstances regarding Lujan that were revealed in the PO's testimony, including "two leases, a bunch of cars, a bunch of cash deposited and then withdrawn, not reporting regularly, [his PO] having to try to find [him]." *Id.* at 64. As to his failure to report, the court admonished, "It is not [the PO's] job to go find you, and it not her job to go to your mother. It's your job to go to her." *Id.* As to his unauthorized residence, the court stated that

> we decide whether you can live with someone in a house full of
> individuals. . . . And the reason is precisely because we don't want you
> living in a house full of people that are felons, people that use alcohol, or
> that use drugs, or that have guns in the house, or that have weapons in the
> house, because you are under strict conditions. And then you are put in a
> situation where even without evidence, I'm supposed to believe that you
> don't know that these things are there?

*Id.* The district court analogized to a hypothetical traffic stop, positing that the police found dangerous weapons and a gun holster in Lujan's car, and he claimed no knowledge of those items. The court stated, "Do you think they would have believed

6

you?  Of course not. . . . [T]hey would not have believed you because of who you are in your community. . . . Your association is still with people in your previous life." *Id.* at 65.  The court cautioned Lujan that, if he failed to "change the people that surround you, you're going to go back to your old life, and your old life is going to bring you down." *Id.*; *see also id.* at 66-67 (district court stating, "I don't want you doing all the same stuff you were doing before.").[2]

## II.    Discussion

Lujan argues that the evidence was insufficient to support the district court's findings that he unlawfully possessed heroin, possessed alcohol, and had access to dangerous weapons.  He also maintains that the court erred as a matter of law by effectively concluding that he constructively possessed these items based solely on his proximity to them and his ability to access the places where they were discovered.[3]

---

[2] The district court's comments about Lujan's "old life" were somewhat cryptic.  In referencing his previous life, the court said that Lujan's "job is to make sure that you are not associating with people that have a felony record, people that use drugs, people that are not okayed by your probation officer." R., Vol. 3 at 65.  The court also referenced Lujan's previous use of "addicts . . . to transport [his] cash." *Id.* at 66.  And regarding his use of unreported vehicles while on supervised release, the court commented that "one of the reasons that drug traffickers drive a million different cars is because they don't want to be caught." *Id.*

[3] Lujan's appeal was not mooted by his completion of his four-month prison sentence because he remains on supervised release, which could potentially be reduced by a favorable appellate ruling.  *See United States v. Salazar*, 987 F.3d 1248, 1252 (10th Cir.), *cert. denied*, 142 S. Ct. 321 (2021).

The full panoply of rights due a defendant in a criminal prosecution does not apply in a supervision-revocation proceeding. *See United States v. Jones*, 818 F.3d 1091, 1098 (10th Cir. 2016). "[M]inimum due process extends to releasees facing revocation of supervised release." *Id.* Our sister circuit has explained that

> [a] convict suspected of violating the terms of his supervised release does not stand in the same shoes as a person accused of committing a crime but not yet convicted. He does not enjoy the presumption of innocence, the right to have his guilt adjudicated beyond a reasonable doubt, or many of the procedural protections associated with a formal trial. Rather, he enjoys less procedural protection and may be punished upon a lesser showing of proof.

*United States v. Waters*, 158 F.3d 933, 939 (6th Cir. 1998), *superseded by rule on other grounds as recognized in United States v. Dowl*, 956 F.3d 904, 908 (6th Cir. 2020). Thus, a court may revoke the grant of supervised release and impose a prison sentence if it finds by a preponderance of the evidence that the defendant has violated a condition of supervised release. *See United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001); 18 U.S.C. § 3583(e)(3).

We review a district court's decision to revoke a term of supervised release for an abuse of discretion. *Disney*, 253 F.3d at 1213. "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013). "Factual findings are clearly erroneous only if they are without factual support in the record or if this court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Cortes-Gomez*, 926 F.3d

8

699, 708 (10th Cir. 2019). We review legal issues de novo. *Disney*, 253 F.3d at 1213.

Lujan argues there was insufficient evidence that he constructively possessed the heroin, alcohol, and knives found in the trailer.[4] "[C]onstructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016).

> Generally, to prove possession, the government must show some nexus, link, or other connection between the defendant and the contraband beyond mere co-occupancy of the premises. Mere proximity to [prohibited items], mere presence on the property where they are located, or mere association with persons who do control them, without more, is insufficient to support a finding of possession. In other words, the government must show some evidence, beyond mere proximity, that a defendant knew about the [prohibited items].

*United States v. Banks*, 884 F.3d 998, 1017 (10th Cir. 2018) (citations, brackets, and internal quotation marks omitted).[5] The United States can satisfy this burden by

---

[4] The district court did not expressly find that Lujan possessed the knives. It found that he violated a condition of his supervised release by having access to dangerous weapons. *See* R., Vol. 3 at 60.

[5] Lujan incorrectly asserts that the United States must show that he, and *only* he, possessed the prohibited items. *See* Aplt. Br. at 12-13. This contention misreads the case he cites, *United States v. King*, 632 F.3d 646, 651 (10th Cir. 2011), *see* Aplt. Br. at 11. In *King*, we initially held that evidence of a defendant's "exclusive possession over the premises" would be sufficient to support an "inference of knowing dominion over or control of" an item found at that premises. *Id.* at 651. But we held that control or dominion over a premises is a factor rather than a requirement. *See id.* And we set forth the nexus test applicable to "situations of joint occupancy." *Id.* That test does not require a showing of exclusive control over the premises or over a particular item.

presenting either direct *or circumstantial* evidence supporting a plausible inference that Lujan knew of and had access to the prohibited items in the trailer. *See United States v. Bowen*, 437 F.3d 1009, 1014-15 (10th Cir. 2006) (concluding there was sufficient circumstantial evidence to establish a nexus between the defendant and drugs found in a car).

Lujan's primary contention is that the record lacks evidence that he had knowledge of any of the prohibited items. To be sure, there was no direct evidence of his knowledge of the heroin, alcohol, or the knives (or of his intent to control these items, which he does not directly dispute). But the totality of the circumstantial evidence supports the district court's findings that he unlawfully possessed the heroin, possessed the alcohol, and had access to the knives. And the court's findings were not based solely on proximity.

The trailer's status as Lujan's residence was strongly supported by the evidence; he was not "mere[ly] presen[t] on the property." *Banks*, 884 F.3d at 1017.[6] The knives were found in his bedroom, among his many other belongings, and there was also a gun holster in the bedside table. This supports an inference of both access to and knowledge of the knives, which Lujan does not dispute qualify as dangerous weapons. *See United States v. McCoy*, 781 F.2d 168, 170-71 (10th Cir. 1985) (upholding factual finding of constructive possession of firearms "found . . . in the

---

[6] Lujan asserts there was no evidence the prohibited items had not been left in the trailer at some time after he stayed there. But the extent of his personal belongings discovered in the trailer supported a reasonable inference that he was residing there at the time of the search.

bedroom where [the defendant] slept and at his residence" and in close proximity to his other personal possessions). The heroin and alcohol were found in common areas of the trailer that a joint resident would regularly access, also supporting at least an inference of access. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 (10th Cir. 2008). And the large amount of alcohol in the kitchen cabinet also supports an inference of knowledge as to that prohibited item. *See id.*

Moreover, the district court did not believe Lujan's assertion that he lacked knowledge of these items. In this regard, it noted his extensive efforts to conceal his violative conduct from his PO: he stopped affirmatively reporting to the PO and did not respond to her communications; he signed a lease for the trailer but failed to report he was living there (conduct the court characterized as reckless and irresponsible), thereby avoiding the PO's process for approving his residence; he was in a relationship with and living with a convicted felon; he did not report quitting his job yet made a $14,000 deposit into his bank account, which he did not sufficiently explain; and he was using multiple cars, some of which he failed to report to the PO. The court described Lujan's conduct as "troubling" and "reminiscent of [his] past life." R., Vol. 3 at 64. In addition, there was other evidence of Lujan's suspicious and evasive behavior. The PO testified that Lujan appeared to be swapping out memory cards on his cell phone, which the PO was unable to search because Lujan provided incorrect passwords. There was also a television in his bedroom at the trailer that displayed the feed from security cameras on the property. And when the PO confronted Lujan about his unauthorized residence—a charge he eventually

11

admitted—he denied living there rather than replying with candor. When all of the evidence is taken into account, it was sufficient to prove by a preponderance of the evidence that Lujan constructively possessed the heroin and alcohol and had access to the knives found in the trailer.[7]

## III. Conclusion

We affirm the district court's judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[7] Although the circumstantial evidence of Lujan's knowledge was weakest with respect to "the small amount of heroin in a tin can container that was found in the couch in the living room," R., Vol. 3 at 18, we conclude the evidence as a whole sufficiently supported the district court's finding that he unlawfully possessed a controlled substance. But even if the court erred as to that one finding, any error was harmless. A single violation was sufficient to revoke Lujan's supervised release. *See* § 3583(e)(3) (permitting revocation upon proof of a violation of "a" condition of supervised release). Lujan admitted two such violations, both of which—like unlawful possession of a controlled substance—were grade C violations; thus, the admitted violations would have resulted in the same guidelines range. *See* R., Vol. 3 at 5. The district court sentenced Lujan at the bottom of that range. In doing so, it did not cite 18 U.S.C. § 3583(g), which mandates a term of imprisonment when a defendant possesses a controlled substance. And nothing in the court's discussion suggests it would have imposed a below-guidelines sentence or granted Lujan's request to hold the revocation petition in abeyance but for its heroin-possession finding. Because we conclude it is more likely than not that the district court would have imposed the same four-month sentence, any error in that finding did not have a substantial influence on the outcome and was therefore harmless. *See Jones*, 818 F.3d at 1101.