RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOHN MADDUX, JR.; CHRISTINA CARMAN,

*Defendants-Appellants*.

Nos. 20-5972

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Ashland.
Nos. 0:14-cr-00020—David L. Bunning, District Judge.

Decided and Filed: June 22, 2022

Before: SUHRHEINRICH, GIBBONS, and KETHLEDGE, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:** Kent Wicker, DRESSMAN BENZINGER LA VELLE PSC, Louisville, Kentucky, for Appellants. Haley Trogdlen McCauley, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

**OPINION**

───────────────

SUHRHEINRICH, Circuit Judge.

Nothing is certain but death and taxes, and cigarettes often beget both. But John Maddux, Jr., and his wife, Christina Carman, along with some friends and family, found a way to skirt the tax part: for years they trafficked cigarettes in a way that bypassed governmental taxing authorities. This enabled them to sell untaxed cigarettes directly to consumers at a steep

discount—converting what would have been taxes into profits for themselves. The law caught up with them, they were convicted and sentenced, and we affirmed in full. *See generally United States v. Maddux*, 917 F.3d 437 (6th Cir. 2019).

If we can be certain of anything else, it is that criminal sentences rarely change (let alone grow) after that point, subject to a few narrow exceptions. Yet we have this case. Before Maddux's and Carman's sentencing hearings, the government sought two multi-million-dollar money judgments against each of them—forfeiture orders representing the gross proceeds of their scheme. So far, good enough. By the time of their sentencings, however, the district court failed to enter preliminary forfeiture orders, nor did it include the money judgments as "part of the sentence[s]" announced. 28 U.S.C. § 2461(c); *see* Fed. R. Crim. P. 32.2(b)(2)(B), (b)(4)(A)–(B). Instead, years after their sentences became final—and affirmed by this court—the district court imposed the two money judgments sought, which Maddux and Carman now appeal.

All agree (including the district court) that that chain of events ignored Federal Rule of Criminal Procedure 32.2(b). That rule provides the procedures for effecting criminal forfeiture, requiring that a preliminary forfeiture order is entered well before sentencing, that forfeiture is included in the sentence, and that any forfeiture (or lack thereof) becomes final at sentencing. The district court, however, justified its late-issued money judgments by calling Rule 32.2(b)'s procedural requirements time-related directives—deadlines that may be violated so long as the defendant receives adequate notice and a hearing. Because we conclude that Rule 32.2(b) is a mandatory claims-processing rule, rather than a time-related directive, we reverse the money judgments in this published opinion. Carman separately appeals two orders entered in her ancillary proceedings below, in which she claims a superior interest in specific property forfeited by Maddux. We affirm those orders in an unpublished appendix to this opinion.

## I.

Maddux and Carman were indicted in 2014. The indictment included a notice of forfeiture with a laundry list of specific real and personal property, which Maddux ultimately agreed to forfeit. The indictment also gave notice of a forfeiture money judgment of "up to at

least $45,000,000.00, derived from the conspiracies, schemes to defraud and money laundering and for which the defendants are jointly and severally liable." R. 1 at 70. Maddux pleaded guilty, and Carman went to trial. The two money judgments came in 2020, upon the government's renewed request for them in the district court.

*Presentencing Proceedings.* Carman was convicted by a jury in January 2016 on two conspiracy counts, one to commit mail and wire fraud, and one to commit concealment money laundering.[1] The day after the jury rendered its verdict, the court held a hearing to discuss forfeiture. During that hearing, the government stated that the only items of specific property sought from Carman were two Cadillac Escalades purchased with proceeds of the scheme, items that Carman agreed to forfeit. That left the issue of a money judgment, which the parties agreed to submit on briefs. The government moved for a $34,934,514.12 money judgment as to Carman (and for separate money judgments as to three other co-defendants, but not Maddux) in late-February 2016.

Unlike Carman, Maddux pleaded guilty in May 2016 to multiple counts of conspiracy to commit mail and wire fraud, money laundering, and defrauding the United States, as well as three counts of making false statements. The government moved in mid-July 2016—roughly nine weeks later and only six weeks prior to his sentencing—for a $45 million money judgment against him.

About a month later, the government and Maddux submitted a joint proposed preliminary order of forfeiture, in which Maddux agreed to forfeit the lengthy list of specific property referenced above, but not a money judgment. The court entered that order on the day of Maddux's sentencing without incorporating a money judgment. The government's two money-judgment motions, both of which were fully briefed by July 2016, thus remained pending prior to Maddux's and Carman's sentencings.

---

[1]The district court later granted her motion for acquittal as to the money-laundering conspiracy.

*Sentencings.*  Maddux and Carman were both sentenced on August 30, 2016.  During Carman's hearing, the court failed to order (or even mention) a money judgment.[2]  The government did not object to the omitted money judgment.  Maddux's sentencing tells a similar story, during which the court forthrightly stated that it would "have to take up later" the issue of "any amendment to any of these judgments to reflect any money judgments."  R. 623 at 7339.  Again, the government did not object.

Both of Maddux's and Carman's criminal judgments, which were entered the next day, cryptically stated that they each forfeited "[a]ll items" listed as forfeitable in the indictment, but neither specifically mentioned a money judgment.  R. 536 at 4403; R. 541 at 4423.[3]  The government's motions for money judgments thus remained pending after Maddux's and Carman's sentences became final.  The government did not appeal the lack of money judgments in either sentence.  *See generally* Fed. R. Crim. P. 32.2(b)(4)(B).

*Intervening Appeals.*  Both Carman and Maddux appealed their convictions and sentences, and we affirmed in February 2019.  *Maddux*, 917 F.3d at 443–46, 450–51.  However, in January 2017—five months after Carman's sentencing and while her appeal was pending—the district court finally granted in part the government's motion for a preliminary forfeiture order as to Carman, imposing a money judgment of about $17.5 million.  For some reason not clear from the record, however, the court did not issue a money judgment as to Maddux.  The court amended Carman's judgment to reflect the new forfeiture order.  Carman separately appealed that order.

Reviewing that money judgment in a later-issued opinion, we held that Carman's first appeal of her convictions and sentence transferred adjudicatory authority from the district court to this court over all aspects of Carman's sentence.  And, because forfeiture is part of the sentence, we held that the district court lacked authority to enter the money judgment once

---

[2]Instead, the court referenced only a potential fine, explaining that it "thought about imposing a fine, but" opted not to, "based upon the volume of the items that were forfeited and the imprisonment that the Court has imposed."  R. 624 at 7388.

[3]The government, without explanation, now concedes that the reference to forfeiture in Carman's judgment was "over[-]inclusive."  Gvt. Br., p. 17 n.1.

Carman appealed her sentence.  *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019).  We likewise rejected the government's request to affirm Carman's money judgment on so-called pragmatic grounds, reasoning that "the government nowhere explains how the Criminal Rules would permit entry of that order [on remand] over Carman's objection, after her sentence was not only imposed in the district court but affirmed on appeal."  *Id.* at 618.  We vacated the money judgment and remanded.  *Id.*

*Money Judgments Entered on Remand*.  After we vacated Carman's money judgment and remanded, the government renewed its motions for money judgments as to both Maddux and Carman.  They both opposed the motions, arguing that the court lacked authority under Rule 32.2 to modify their sentences (by adding additional forfeiture) long after those sentences became final.

The district court disagreed, finding that "[t]he deadlines in Rule 32.2 are 'time-related directives,' which are '"legally enforceable but do not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed."'"  R. 791 at 9830 (quoting *United States v. Martin*, 662 F.3d 301, 308 (4th Cir. 2011)).  As long as Maddux and Carman received "notice and [an] opportunity to be heard," the court reasoned, it could impose money judgments at any time.  *Id.* at 9831 (quoting *United States v. Schwartz*, 503 F. App'x 443, 448 (6th Cir. 2012)).  It thus concluded: "[w]hile the niceties of Rule 32.2 were not observed, both Defendants had ample notice of the United States' intention to seek a forfeiture money judgment and were not deprived of the opportunity to be heard in that regard."  *Id.* at 9832.  It imposed the two money judgments sought: $45 million as to Maddux and nearly $17.5 million as to Carman.  They now appeal.

## II.

A forfeiture order, including a money judgment, is "part of the [defendant's] sentence in the criminal case."  28 U.S.C. § 2461(c); *see also* Fed. R. Crim. P. 32.2(b)(4)(B); *Libretti v. United States*, 516 U.S. 29, 38–39 (1995).  And, once a court imposes a sentence, generally it may not "change or modify that sentence unless such authority is expressly granted by statute."

*United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013) (per curiam); *see also* 18 U.S.C. § 3582(c).

Federal Rule of Criminal Procedure 32.2 thus provides a rigid procedure to ensure that any forfeiture order is correct before it becomes final at sentencing—which furthers interests in due process and judicial economy. Whenever possible, the court "must promptly enter [after guilt is established] a preliminary order of forfeiture setting forth the amount of any money judgment . . . sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant" at sentencing. Fed. R. Crim. P. 32.2(b)(2)(A)–(B), (b)(4)(A). Then, at sentencing, "[t]he court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture." *Id.* 32.2(b)(4)(B). Finally, the court "must . . . include the forfeiture order, directly or by reference, in the judgment." *Id.*

We review the interpretation of forfeiture laws and the Federal Rules of Criminal Procedure de novo. *United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013); *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005).

**A.**

As noted, the district court concluded that it could modify Maddux's and Carman's sentences because, in its view, Rule 32.2(b)'s strictures are "time-related directives." R. 791 at 9830 (citation omitted). The court adopted the Fourth Circuit's conclusion that *Dolan v. United States*, 560 U.S. 605, 611 (2010)—which held that a restitution-hearing deadline in the Mandatory Victims Restitution Act (MVRA) is a time-related directive—applies equally to Rule 32.2(b), *see Martin*, 662 F.3d at 308; *id.* at 307 ("[W]e conclude that missing the deadline set in Rule 32.2 does not deprive a district court of jurisdiction[.]").

*Dolan* concerned the MVRA's 90-day-hearing deadline. That provision provides that, if the victim's losses (a figure used to calculate restitution) cannot be determined prior to sentencing, "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." *Dolan*, 560 U.S. at 607–08 (quoting 18 U.S.C. § 3664(d)(5)). Because the district court held its restitution hearing after the 90-day mark, the issue was whether

the resulting restitution order could stand—where the MVRA was silent on "the consequences of the missed deadline." *Id.* at 610.

To answer that question, the Court considered the "statutory language," "the relevant context," and what those two considerations say "about the purposes" of a given statutory or rule-based deadline. *Id.* It summarized three general categories of deadlines, each of which serve distinct purposes: (1) "jurisdictional" deadlines that may not be forfeited and, if missed, "prevent[] the court from permitting or taking" a given action; (2) "ordinary 'claims-processing rules'" that may be forfeited but "regulate the timing of motions or claims brought before the court"; and (3) "deadline[s] [that] seek[] speed by creating a time-related directive that is legally enforceable but does not deprive a judge . . . of the power to take the action to which the deadline applies." *Id.* at 610–11. Considering the text, context, and purpose of the MVRA, the Court concluded that the 90-day deadline is a flexible time-related directive, rather than a jurisdictional backstop that "deprive[s] the court of the power to order restitution." *Id.* at 611.

Although *Dolan* provides little direct guidance for the precise issue here**[4]**—what separates time-related directives from claims-processing rules—our path is nonetheless well-charted. When reviewing Carman's first money judgment, we explained that "deadlines in court rules are 'nonjurisdictional,'" but they "of course remain enforceable, since they 'assure relief to a party properly raising them.'" *Carman*, 933 F.3d at 617 (quoting first *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019), then *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). For a deadline to assure relief, it may not be ignored when properly invoked; such deadlines are "inflexible" and "unalterable." *Eberhart*, 546 U.S. at 15, 19 (citation omitted). Put differently, like jurisdictional deadlines, mandatory claims-processing rules bind courts and may not be equitably tolled. *See Nutraceutical*, 139 S. Ct. at 714; *United States v. Alam*, 960 F.3d

---

**[4]***Dolan* faced a distinct question—whether the statutory deadline in the MVRA was jurisdictional. *See* 560 U.S. at 608 (holding that "a sentencing court that misses the 90-day deadline nonetheless *retains the power to order restitution*" (emphasis added)); *id.* at 620. That framing made sense because Congress may, by statute, limit courts' jurisdiction. *See id.* at 622 (Roberts, C.J., dissenting). Here, however, we know that Rule 32.2 is not jurisdictional, because court rules "do not create or withdraw federal jurisdiction," *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004) (citation omitted), so the only question is whether Rule 32.2 is nonetheless a mandatory claims-processing rule. Thus, although we use *Dolan*'s rough framework—considering the text, structure, and purpose of Rule 32.2—to answer that question, our analysis does not perfectly overlay *Dolan*'s. Further, *Martin* failed to perceive that difference (among others, as we note throughout below), which led the court astray. *See Martin*, 662 F.3d at 311–13 (Gregory, J., dissenting).

831, 833–34 (6th Cir. 2020). And, "[b]y definition," they "are not subject to harmless-error analysis." *Manrique v. United States*, 137 S. Ct. 1266, 1274 (2017). The "critical difference" is that, unlike jurisdictional deadlines, claims-processing rules may be forfeited. *Kontrick*, 540 U.S. at 456.

Time-related directives, on the other hand, are the flexible yogis of court deadlines—they can be forfeited, are subject to harmless-error review, and do not strictly bind courts. *See Dolan*, 560 U.S. at 611, 617. Why? Because their purpose is generally to seek speed for some extrinsic reason—like ensuring that victims receive restitution sooner rather than later, *see id.* at 613—not to ensure, as is usually true with claims-processing rules, that a given claim is made when it's best fit for adjudication, *see, e.g.*, *Eberhart*, 546 U.S. at 19 (considering Rule 33(a)'s deadline for filing motions for a new trial).

**B.**

Rule 32.2's text, context, and purpose squarely place it in *Dolan*'s second category, as a mandatory claims-processing rule. *First*, Rule 32.2(b) repeatedly uses the mandatory "must," directed mostly at the sentencing court, to command each step of the forfeiture process. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (b)(2)(A), (b)(2)(B), (b)(4)(B). When comparing the effect of the "must" similarly "directed toward the court" in Rule 32(i)(4)(A)(ii), we noted that such language "tends to impose unyielding procedural requirements 'impervious to judicial discretion.'" *United States v. Dowl*, 956 F.3d 904, 908 (6th Cir. 2020) (per curiam) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). Calling Rule 32.2(b)'s procedures time-related directives, however, effectively erases its mandatory language.

To be sure, *Dolan* reasoned that the MVRA's use of the emphatic "shall" did not itself render the 90-day deadline mandatory, because the MVRA failed to "specify a consequence for noncompliance." *Dolan*, 560 U.S. at 611 (citation omitted). And Rule 32.2(b)'s text, like the MVRA, stops short of expressly specifying a consequence for missing its deadlines. It does not, for example, go so far as to say, "if a preliminary forfeiture order is not entered before sentencing, and forfeiture is not imposed at sentencing, then forfeiture may not be imposed at all, absent a successful appeal by the government." *Cf.* 18 U.S.C. §§ 3161(c), 3162(a)(2) (requiring,

for missing the Speedy Trial Act deadline, dismissal of the indictment). *But see Eberhart*, 546 U.S. at 19 (deeming Rule 33(a)'s deadline a claims-processing rule, despite the lack of similar consequential language).

But whatever, if anything, the text of Rule 32.2(b) lacks, its structure makes up the difference—a structure that dovetails with other rules aimed at giving sentences finality. For one thing, Rule 32.2(b)(4)(A) provides that "[a]t sentencing," any preliminary forfeiture order "becomes final as to the defendant." Final means final, so Rule 32.2(b) envisions only one bite at the apple—unless Rules 35(a) or 36 permit a later, smaller bite after sentencing. *See* Fed. R. Crim. P. 32.2(b)(2)(B) advisory committee's notes to 2009 amendments (explaining that, after sentencing, the rules provide "only very limited authority to correct" a forfeiture order, and, if an "error or omission" in the order "do[es] not fall within Rules 35(a) or 36, . . . the parties may be left with no alternative to an appeal, which is a waste of judicial resources"). For another, Rule 32.2(b) squarely contemplates a "court's *failure* to enter a[] [preliminary forfeiture] order" by sentencing—a failure that it directs "the *government*" to appeal once "judgment is entered." *Id.* 32.2(b)(4)(C) (emphases added); *United States v. Shakur*, 691 F.3d 979, 987 (8th Cir. 2012) (explaining that "'the forfeiture order' [as used in Rule 32.2(b)(4)(C)] obviously means a preliminary forfeiture order entered" under Rule 32.2(b)(2)).

All of that is quite unlike the MVRA's deadline, which does not wrap up restitution under a single bow *at* sentencing, but instead sets an outer-bound limit (90 days) *after* sentencing for the restitution hearing, if that extra time is needed. *See* 18 U.S.C. § 3664(d)(5). Rule 32.2(b) envisions an entirely different endpoint (the sentencing hearing) and provides no similar workaround; rather, it requires the court to include forfeiture in the sentence and, as noted, all but requires the government to appeal when that doesn't happen. *See* Fed. R. Crim. P. 32.2(b)(4)(C); *cf. id.* 32.2(b)(2)(C) (authorizing the entering of—but only if done "before sentencing"—a "general" forfeiture order that defers calculating "the total amount of the money judgment" until a later date). That key difference means at least one thing: if forfeiture is not included in the sentence per Rule 32.2(b), it may be added later only if Rules 35(a) or 36 allow for it (or if the government timely appeals and wins a resentencing). *See id.* 32.2(b)(4)(B)–(C); *Shakur*, 691 F.3d at 987.

At any rate, unlike the consequence feared in *Dolan* (depriving victims of restitution for a blown deadline they did not cause), the consequence here (requiring a government appeal to correct a Rule 32.2(b) error that cannot be otherwise corrected) is hardly an anomaly requiring express recognition in Rule 32.2(b)'s text. It's exactly what happens when any other aspect of punishment, even a mandatory one, is errantly omitted from a sentence. *See Shakur*, 691 F.3d at 988 n.6 ("'[O]nce a sentence has been imposed, the trial judge's authority to modify it is' limited to Rule 35." (quoting *United States v. Addonizio*, 442 U.S. 178, 189 n.16 (1979))); *cf. Greenlaw v. United States*, 554 U.S. 237, 248, 252–53 (2008) (holding that a court of appeals may not impose sua sponte a mandatory-minimum prison term, when errantly omitted from the sentence, absent the government's cross-appeal). All told, given these differences between the MVRA and Rule 32.2(b), we must give effect to its mandatory language.

*Second*, if claims-processing rules "regulate the timing of motions or claims brought before the court," *Dolan*, 560 U.S. at 610, it's hard to imagine a better example of that than Rule 32.2. The rule regulates every stage of the criminal forfeiture process—from requiring a forfeiture notice in the indictment, to determining the specific property (or the amount of any money judgment) subject to forfeiture, to issuing a preliminary forfeiture order, to including the forfeiture order in the sentence and judgment, to litigating third parties' interests in to-be-forfeited property. *See generally* Fed. R. Crim. P. 32.2(a)–(c). This A-to-Z roadmap for criminal forfeiture requires that "certain procedural steps [be taken] at certain specified times." *Manrique*, 137 S. Ct. at 1272 (citation omitted). It is the quintessential claims-processing rule.

*Third*, Rule 32.2(b)'s undoubtable purpose is to ensure defendants receive due process paired with finality and efficiency. Contrast that with the purpose of the MVRA's 90-day deadline, which "seeks speed primarily to help the victims of crime and only secondarily to help the defendant." *Dolan*, 560 U.S. at 613. Rule 32.2(b) flips that script—it arms defendants with procedures to correct preliminary forfeiture orders before sentencing. And this practice, when followed, ensures correct final forfeiture orders, which in turn preserves scarce judicial resources. *See* Fed. R. Crim. P. 32.2(b)(2)(B) advisory committee's notes to 2009 amendments (explaining that it's "undesirable" to delay entering preliminary orders until sentencing, given the limited authority to correct them thereafter and the costs owing to appeals); *United States*

*v. Marquez*, 685 F.3d 501, 509 (5th Cir. 2012) ("These procedures are not empty formalities."); *Shakur*, 691 F.3d at 988 (similar).  In short, Rule 32.2(b) aims to culminate forfeiture at sentencing; it follows that, once sentencing occurs, defendants can be sure no more forfeiture awaits them—just like they can be sure that no other new punishment does.  *See* Fed. R. Crim. P. 32.2(b)(4)(A); *Greenlaw*, 554 U.S. at 252–53.  Those substantive purposes in fairness and finality are far removed from the MVRA deadline's more circumscribed purpose: to compensate victims sooner rather than later.

*Fourth*, we see little practical downside to deeming Rule 32.2(b) a claims-processing rule.  Unlike in *Dolan*, where strictly reading the 90-day deadline would have necessarily foreclosed restitution awards to "the victims of crime—who likely bear no responsibility for the deadline's being missed," 560 U.S. at 613–14, no similar risk is present here, for two reasons.

Most importantly, the government's timely appeal of a preserved Rule 32.2(b) error will allow for corrections as a matter of course, particularly since forfeiture is mandatory.  *See* 28 U.S.C. § 2461(c); *United States v. Smith*, 749 F.3d 465, 488 (6th Cir. 2014).  And the government's failure to appeal is its own fault, not the fault of a blameless, nonparty victim. Further, the purpose of forfeiture is to punish the defendant by stripping him of unlawful gains; restitution's purpose is distinct—to "restore the victim's loss."  *United States v. Boring*, 557 F.3d 707, 714 (6th Cir. 2009).  Forfeited property thus ordinarily ends up in the hands of the government, not victims.  And while certain federal officials have discretion to transfer forfeited property "as restoration to any victim of the offense," 18 U.S.C. § 981(e)(6), that baked-in (and seemingly unfettered) discretion attenuates any potential impact on victims, who thus only *might* receive forfeited property[5]—quite unlike the restitution *mandatorily* destined for victims under the MVRA.  *See generally United States v. Joseph*, 743 F.3d 1350, 1355 (11th Cir. 2014).

As all of that suggests, we are not persuaded by the cases (by our eyes, just two published ones) that have called Rule 32.2(b) a time-related directive.  *See United States v. McIntosh*, 24 F.4th 857, 860 (2d Cir. 2022); *Martin*, 662 F.3d at 309.  *Martin* fundamentally erred by

---

[5]*See* 2 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 14.08(3)(d) (Matthew Bender) ("Such procedures are time consuming and do not necessarily result in the victims receiving the forfeited property.").

minimizing the finality secured by Rule 35(a)'s 14-day deadline for correcting clear sentencing errors—a deadline that Rule 45(b)(2) guards as sacrosanct. *See Martin*, 662 F.3d at 308 n.13 (noting that, if "it was not error under Rule 35" to order restitution after the deadline in *Dolan*, "it was similarly not error under Rule 35 for the district court . . . [to] miss[] the deadline governing forfeiture").

What *Martin* failed to grasp is that the MVRA, by statute, effectively *extends* Rule 35(a)'s amendment period (but only as to determining the victim's losses) to 90 days after sentencing. *See* 18 U.S.C. § 3664(d)(5). Rule 32.2(b), however, does not. The only comparable option is a "general" forfeiture order, but even that must be entered "before sentencing," and the Advisory Committee cautions that this option should be reserved "only [for] unusual circumstances and not [used] as a matter of course." Fed. R. Crim. P. 32.2(b)(2)(C) advisory committee notes to 2009 amendment. Rule 32.2(b) instead aims to wrap forfeiture at sentencing, subject to Rules 35(a) and 36. Therefore, *Martin*'s analogy to *Dolan* is fatally flawed. *See Shakur*, 691 F.3d at 988 n.6 (expressing "reluctan[ce] to follow" *Martin* because of this); *Martin*, 662 F.3d at 311 (Gregory, J., dissenting) (noting "the majority's ruling essentially reads Rule 35 out of the" Criminal Rules). *McIntosh* accepted *Martin*'s reasoning, and it similarly elided the Rule 35(a) issue. *See McIntosh*, 24 F.4th at 860, 862.

Because we must give effect to Rule 35(a), we reject *Martin* and *McIntosh*.[6] We instead side with *Shakur*—which reasoned that, where a district court entered neither preliminary nor final forfeiture orders "before entry of final judgment and passage of the fourteen-day corrections period granted by Rule 35," such an omission cannot be corrected later under Rule 36. *Shakur*, 691 F.3d at 987. The court similarly recognized that due process requires not only adequate notice, but also "procedures to contest the deprivation of property rights," *id.* at 988 (citation and emphasis omitted)—procedures the defendant was denied by the district court's

---

[6]Even if we agreed, however, *McIntosh* and *Martin* are factually distinguishable from this case, so their reasoning can do little to guide ours. Most importantly, the district courts in both cases orally ordered forfeiture at sentencing (or, as in *Martin*, at the forfeiture hearing immediately before sentencing). *McIntosh*, 24 F.4th at 859; *Martin*, 662 F.3d at 305. The same is true for *Schwartz*, which appears to be this court's only prior case squarely facing a Rule 32.2(b) error. *See Schwartz*, 503 F. App'x at 449. There, the defendant stipulated in his plea agreement to the money judgment's sum, and the money judgment was ordered at sentencing. *Id.* None of those cases faced the much more egregious fact pattern here: where the money judgments were not ordered prior to or during sentencing.

"wholesale violation of" Rule 32.2(b)'s "mandates," *id.*  *Shakur* is factually analogous to this case, and its reasoning is persuasive.[7]

In sum, the text, context, and purpose of Rule 32.2(b) all lead to an inevitable conclusion: it is a mandatory claims-processing rule—one that ensures forfeiture is resolved fairly and fully before becoming final, which preserves judicial resources by avoiding wasteful appeals over avoidable errors.  Once a criminal sentence is imposed, the judgment is final, both as to what it includes and what it lacks, subject to Rules 35(a) and 36.  If the government wishes to "enlarge [the] sentence" with forfeiture omitted from the sentence, it must timely appeal.  *Greenlaw*, 554 U.S. at 252–53; *see* Fed. R. Crim. P. 32.2(b)(4)(B).

## C.

That all but resolves this appeal, because the district court entirely failed to follow Rule 32.2(b)'s requirements.  It did not, for example, enter a preliminary forfeiture order before either Maddux's or Carman's sentencing hearings, nor did it unambiguously defer doing so in a general order entered before those sentencings.  *See* Fed. R. Crim. P. 32.2(b)(2)(B), (b)(2)(C).  Such failures, standing alone, might be remedied where forfeiture is ordered at least during sentencing—because that necessarily "ensure[s] that the defendant knows of the forfeiture at sentencing." *Id.* 32.2(b)(4)(B).

But the district court failed to do even that bare minimum: it didn't discuss a money judgment during Carman's sentencing, instead noting only that it had not "signed th[e] [government's] preliminary [forfeiture] order yet." R. 624 at 7388.  And it expressly deferred ruling on "any money judgments" during Maddux's sentencing, saying that it would "have to take up later" the issue of "any amendment to any of these judgments to reflect" that. R. 623 at 7339.  Those equivocations left not only the amount of the money judgments, but also *whether* they would be entered, up in the air.  We thus cannot say that the court "otherwise ensure[d] that" both Maddux and Carman knew—in the same way they would otherwise know had their money judgments been "orally announc[ed]" in their sentences—that they would still be

---

[7]But, to the extent that *Shakur* considered Rule 32.2's mandates jurisdictional—which is suggested by its statement that the district court lacked "power to enter" the forfeiture order, *Shakur*, 691 F.3d at 989—we disagree, *see Carman*, 933 F.3d at 617 (noting that deadlines in court rules are "nonjurisdictional" (citation omitted)).

subjected to money judgments. Fed. R. Crim. P. 32.2(b)(4)(B). And the time to appeal that failure began to run when their judgments issued, per Rule 32.2(b)(4)(C).

Since the procedures in Rule 32.2(b) were not followed, and the government did not timely appeal or otherwise object to correct the court's errors, we can affirm these money judgments only if Rules 35(a) or 36 authorized them. They did not. Rule 36 authorizes the correction, at any time, of only clerical errors—such as failing to reference an already-issued forfeiture order in the written judgment. *See* Fed. R. Crim. P. 32.2(b)(4)(B). But clerical errors do not include "unexpressed sentencing expectations, or . . . errors made by the court itself." *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004) (citation omitted). The district court's deferral can be described as only that—a yet-to-be-determined aspect of sentencing. That was no clerical error, so Rule 36 does not apply. *See Shakur*, 691 F.3d at 989.

Rule 35(a) is a bit more forgiving—it authorizes the correction of "arithmetical, technical, or other clear error"—but only if done "[w]ithin 14 days after sentencing." Fed. R. Crim. P. 35(a); *see also id.* 45(b)(2) (forbidding extensions of "time to take any action under Rule 35, except as stated in that rule"). The money judgments here, however, were entered years after Maddux's and Carman's sentencings, so Rule 35(a) does not apply either.

The government's arguments for affirmance are unconvincing. It first argues that because "Rule 32.2(b)'s timing requirements are not jurisdictional," courts may "enter a forfeiture order post-sentencing." Gvt. Br., p. 13. But, as we hold today, Rule 32.2(b) is a mandatory claims-processing rule. Such rules are "inflexible," even if not jurisdictional. *E.g.*, *Eberhart*, 546 U.S. at 19. Their nonjurisdictional status means only that they may be forfeited if not timely invoked. *Id.* And the government here, by not timely appealing or otherwise objecting to the district court's failure to issue money judgments once Maddux's and Carman's sentences became final, *see* Fed. R. Crim. P. 32.2(b)(4)(C), forfeited the opportunity to seek such punishment, *see Greenlaw*, 554 U.S. at 252–53. Just because forfeiture is mandatory does not change that conclusion. *See id.*

The government suggests that the onus was on Maddux and Carman to "object to or seek to amend their judgments" to include the money judgments. Gvt. Br., p. 17. That idea is at odds

with our adversarial system, which burdens the government to present and prove the arguments warranting criminal punishment. *See generally Greenlaw*, 554 U.S. at 243–44. It's also at odds with Rule 32.2(b)(4)(C)'s text, which directs the *government* to appeal "the court's failure to enter an order . . . [once] judgment is entered." Hence, the government's related argument that it had "nothing to appeal"—because its money-judgment motions remained pending after Maddux and Carman were sentenced—is foreclosed by the text of the rule. Gvt. Br., p. 18.

Lastly, the government suggests that Maddux's and Carman's written judgments cured all Rule 32.2 irregularities. *See* Gvt. Br., pp. 17–18. That is, both judgments contained a single cryptic (and, as to Carman, overinclusive) sentence, stating that each defendant forfeited "[a]ll items" under the indictment's notice of forfeiture. R. 536 at 4403; R. 541 at 4423. The government argues those references "demonstrated the court's intention to enter a final forfeiture judgment post-sentencing." Gvt. Br., p. 17. The government nowhere explains what authorized that tack. At any rate, those general references did nothing to correct the court's most basic failure—not including the money judgments in the oral sentences or otherwise ensuring that both Maddux and Carman knew that it would definitively impose money judgments (and at what amount). Fed. R. Crim. P. 32.2(b)(4)(B). By the time their written judgments were entered, that failure became final, and the government's decision to not cross-appeal was fatal.

**III.**

For these reasons and those set forth in the unpublished appendix to this opinion, we reverse Maddux's and Carman's money judgments, and we affirm the orders separately appealed by Carman.